IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| JANE IWEBO | * |
| Plaintiff, | * |
| vs. | *  **Case No. 1: 19-cv-03008-BPG** |
| SHEPPARD PRATT HEALTH SYSTEM, INC. | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,

Plaintiff, by and through her undersigned counsel, files this Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss (Dkt. No. 11) Dismissal is improper in this case because Plaintiff's Complaint and Jury Demand set forth claims on which relief can be granted, and state plausible claims "for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, ___ U.S.___, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012) (citation omitted).

### A. INTRODUCTION

Plaintiff is Jane Iwebo and defendant is Shepard Pratt Health System, Inc ("SPHS" or "Defendant"). On October 16, 2019, Plaintiff filed a Complaint and Jury Demand against Defendant for (1) employment national origin, and race, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of *1964* § 7, 42 U.S.C. § 2000e et seq. (*1964*). ("Title VII"), and the Civil Rights Act of 1866 ("Section 1981"), as amended, 42 U.S.C.§ 198; (2) age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq.; and, (3)

1

disability discrimination in violation of Title I of the Americans with Disabilities Act, as amended, 42 U.S.C.A §§ 12101 et seq. ("ADA"). On December 23, 2019 Defendant filed its Motion to Dismiss.

### B. STATEMENT OF FACTS

On or about February 6, 2005, Defendant employed Plaintiff as a Registered Nurse. Throughout Plaintiff's employment, Plaintiff performed satisfactorily and commendably. Sometime in January 2017 Plaintiff went on medical leave for treatment after Plaintiff was diagnosed with cancer. On or about May 30, 2017, Plaintiff returned to work from medical leave. Plaintiff returned to work on the night shift, which was Plaintiff's regularly assigned work shift. Complaint ¶¶ 7,8,9.

On or about June 30, 2017, Plaintiff requested an accommodation to work day shift, due to Plaintiff's medical condition and based on Plaintiff's oncologist recommendation. On or about July 5, 2017, Plaintiff's unit manager Ms. Bahra Amanpreet, and the chief nursing officer, Ms. Ernestine Crosby, denied Plaintiff's request to change Plaintiff's shift from a night shift to a day shift. Complaint ¶¶ 10, 11.

On or about July 11, 2017, Plaintiff was called by Ms. Amanpreet and Ms. Crosby for a "personnel" meeting. During the meeting Mrs. Iwebo was told to go on extended medical leave or go to work on another unit. On or about August 1, 2017, Defendant hired a Caucasian staff on the day shift that Plaintiff had requested accommodation to work. In response, Mrs. Iwebo emailed her managers complaining of bias in denying Plaintiff's request to work the day shift and Defendant offering the position to a younger Caucasian new employee. Complaint ¶¶ 12, 13.

On or about September 6, 2017, Plaintiff reported a complaint to Plaintiff's nurse manager, Ms. Markov. Plaintiff reported that the shift coordinator, Ms. Celeste Carr, harassed,

2

humiliated and attempted to fire Plaintiff because Plaintiff "was in the milieu office … looking up treatment related information" for a patient. Complaint ¶ 16.

On or about September 15, 2017, Plaintiff's supervisors issued Plaintiff a "Final Warning Corrective Action Report alleging Plaintiff violated Defendant polices and rules pertaining to: (1) personal use of Defendant's computer; (2) refusal and insubordination; (3) giving a false statement; and, (4) refusal to accept assignment, all in relation to Plaintiff's September 6, 2017, reported complaint against Ms. Carr. Complaint ¶ 18.

On September 18, 2017, after Plaintiff initiated an EEOC complaint against Defendant, Plaintiff received a call from Defendant's human resource office telling Plaintiff that Plaintiff was placed on administrative leave pending investigation regarding "what was said to a staff" during end of shift report. Complaint ¶ 20.

On or about September 19, 2017, Mrs. Iwebo filed an EEOC Charge of Discrimination against Defendant for retaliation, and employment, race, age, disability and national origin discrimination. Complaint ¶ 21.   On or about September 28, 2017, Mrs. Iwebo received a call from Defendant's human resource office firing Mrs. Iwebo for alleged hostile behavior toward staff. Subsequently, Mrs. Iwebo received a termination letter from Defendant, dated September 28, 2017, stating in part that: "We have completed our investigation into reports that you undermined a culture of safety by being hostile towards a colleague." And, "Due to the severity of this incident, combined with a recent final warning corrective action, we have made the decision to terminate your employment effective today." Complaint ¶ 23.

Based on Plaintiff's knowledge information and belief, Defendant have targeted African nurses, for termination and replace them with Caucasian nurses. Over the past two years, African nurses, Abby Olu Jacobs, Olubimpe, Francisca Onyedum, Solange, Amabue Iwudike, Amarachi

Chigbu, Jean Ogu, Lachresha Fullard and Chika lwudike and many more were either fired or forced to resigned and replaced by Caucasian nurses. Additionally, all of Defendant's per diem African nurses were dismissed and told that Defendant was doing away with per diem nurses. However, a few months later, the per diem positions were filled with Caucasian nurses. Some of per diem African nurses who were discharged, applied for the new positions, however, none was rehired by Defendant." Defendant have also denied African nurses promotions and positions for which they were qualified, while promoting Caucasian nurses who were less qualified and experience that the African nurses. This includes, but is not limited to Jane Kinyua, who is been denied a nurse practitioner position, and Gloria Nnah who was denied a supervisor position that was given to Caucasian nurse Celeste Carr. Complaint ¶ 24.

## C.  ARGUMENT

### STANDARD OF REVIEW

#### A.  Motion To Dismiss.

"Plaintiff's Complaint must only include "a short and plain statement showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a) (2). In the employment discrimination context, a plaintiff need not establish a *prima facie* case in order to survive a motion to dismiss. *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 802 (1973); *See also Sweierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) (concluding that "the prima facie case…is an evidentiary standard, not a pleading requirement."). The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S 41, 45-45, 78 S. Ct. 99, 2 L.Ed 2d 80 (1957).*See also Neitze v. Williams*, 590 U.S. 319 326-27, 109 S. Ct. 1827, 104 L.Ed.2d (1989). Thus, the standard to be applied when evaluating a motion to dismiss for failure

to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucs*, 537.F.2d 857, 858 (6th Cir. 1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied *Scheuer v. Rhodes*, 416 U.S. 232, 236 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)."

    **a. Plaintiff's Title VII Termination-Related Claims Are Not Barred By Plaintiff's Failure To Exhaust Her Administrative Remedies.**

Plaintiff admittedly did not file a separate charge of discrimination for Plaintiff's September 28, 2017 termination, which was not included in Plaintiff's charge of discrimination. Plaintiff's statement of particulars in the charge of discrimination states in part: I began my employment with the above referenced employer in 2006, as a Registered Nurse. In January 2017, I went out on medical leave for my disability. Documentation was given to my employer notifying them of my disability at this time. Upon my return, I filed a discrimination complaint. Shortly thereafter, I was disciplined through a first and final write-up. I also requested a reasonable accommodation to be placed on the day shift. My request for accommodation was denied. I later learned that a (younger, American, white, non-disabled) individual was given a day shift position." (Dk. No. 11-4);

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." However, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ." *Sydnor*, 681 F.3d at 595. In *Sydnor,* the Fourth Circuit said, *id.* at 594: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Accord Jones v. Southpeak Interactive Corp. of*

*Del.,* 777 F.3d at 669; *Jones v. Calvert Group, Ltd.,* 551 F.3d 297, 300 (4th Cir. 2009); *Evans,* 80 F.3d at 963. "The scope of the plaintiff's right to file a federal lawsuit is determined by the...contents" of the charges filed by the plaintiff with the EEOC or a corresponding state agency during the process of exhaustion of administrative remedies. *Jones*, 551 F.3d at 300 (citation omitted). Put another way, "'[o]nly those discrimination claims stated in the initial charge, [*36] those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent...lawsuit.'" *Id.* (citation omitted). However, an EEOC charge "'does not strictly limit a...suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). *Hartman v. Univ. of Md.*, Civil Action No. ELH-10-2041, 2012 U.S. Dist. LEXIS 115009, at *35-36 (D. Md. Aug. 14, 2012)

In this case, Plaintiff's should be able to advance her claim of discriminatory discharge because the claim "reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation." Plaintiff allege that "I filed a discrimination complaint. Shortly thereafter, I was disciplined through a first and final write-up. Defendant fired Plaintiff in part, "Due to the severity of this incident, combined with a recent final warning corrective action." Clearly, Plaintiff's termination is not only related, but could "reasonably be expected to follow the charge of discrimination." Furthermore, this claim could be developed by reasonable investigation of the original EEOC complaint, if such an investigation was undertaken.

b. **Plaintiff Alleged Sufficient Factual Allegations to State A Claim For National Origin and Race Discrimination**

"[I]n a Title VII discrimination claim, "a complaint in an employment discrimination lawsuit [need not] contain specific facts *establishing* a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (emphasis added). Rather, as with any other claim falling within the purview of Rule 8(a), "to survive a motion to dismiss, the complaint must 'state a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, ___ U.S.___, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012) (citation omitted). In the context of a Title VII race discrimination claim, the [*17] Fourth Circuit has framed the prima facie case as: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Id.* (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)); *see also Gerner v. County of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012). *Johnson v. Balt. City Police Dep't*, Civil Action No. ELH-12-2519, 2014 U.S. Dist. LEXIS 41669, at *16-17 (D. Md. Mar. 27, 2014)

In the Complaint, Plaintiff has alleged facts indicating that Plaintiff is,"1) a member of a protected class in that she, "is a black female citizen of the U.S. of Nigerian national origin, and 2) that, "Throughout Plaintiff's employment, Plaintiff performed satisfactorily and commendably". Complaint ¶¶ 7,8, 9  3) Plaintiff further allege that Defendant took adverse employment actions against Plaintiff, to include: July 5, 2017 denial of accommodation to work day shift, the July 11[,] 2017 directive to go on extended leave or go to another nursing unit,

September 6, 2017 attempt to fire Plaintiff, September 15, 2017 Final Warning Corrective Action, the September 17, 2017 suspension of Plaintiff, and, the September 28, 2017 termination of Plaintiff's employment. Complaint ¶¶ 27, 32.

Defendant contends that, "Plaintiff alleges no facts regarding whether Plaintiff's job performance was satisfactory." Admittedly, Plaintiff may have allege that all of Plaintiff's performance evaluations were satisfactory and that Plaintiff had never received a prior corrective in twelve years of employment with Defendant, before the September 2017 final disciplinary action. However, this is a reasonably inference that may be drawn from Plaintiff's factual allegation that "Throughout Plaintiff's employment, Plaintiff performed satisfactorily and commendably", Complaint ¶ 7.

Defendant next contend that some of the alleged adverse employment actions, were not actionable adverse employment action. Particularly, the July 5, 2017 denial of accommodation to work day shift, the July 11[,] 2017 directive to go on extended leave or go to another nursing unit and the September 6, 2017 attempt to fire Plaintiff.

An "adverse employment action" is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland,* 487 F.3d at 219 (alteration in original) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). While "[c]onduct short [*47] of ultimate employment decisions can constitute adverse employment action*," James,* 368 F.3d at 375-76 (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)) (internal quotation marks omitted), the "typical requirements for a showing of an 'adverse employment action'" are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced

opportunities for promotion," Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999). For example, the Fourth Circuit has held that a reassignment only constitutes an "adverse employment action" if the reassignment has a "significant detrimental effect" on the plaintiff. *Id.* at 256. "[E]ven if the new job . . . cause[s] some modest stress not present in the old position," reassignment to a new position "commensurate with one's salary level" is not an "adverse employment action" unless there is a "decrease in compensation, job title, level of responsibility, or opportunity for promotion." Id. at 256-57. As another example, "a poor performance evaluation 'is actionable only where the employer subsequently uses [*48] the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" *James,* 368 F.3d at 377 (quoting *Spears v. Mo. Dep't of Corr. & Human Res.,* 210 F.3d 850, 854 (8th Cir. 2000)). "An evaluation merely causing a loss of prestige or status is not actionable." Id. *Alexander v. City of Greensboro*, No. 1:09-CV-934, 2011 U.S. Dist. LEXIS 679, at *46-48 (M.D.N.C. Jan. 4, 2011)

Here Plaintiff has alleged facts in the complaint that the July 5, 2017 denial of accommodation to work day shift; the July 11[,] 2017 directive to go on extended leave or go to another nursing unit; the September 6, 2017 attempt to fire Plaintiff, the September 15, 2017 Final Warning Corrective Action; the September 17, 2017 suspension of Plaintiff, and, the September 28, 2017 termination were adverse action. Although the July 11[,] 2017 directive to go on extended leave or go to another nursing unit; and the September 6, 2017 attempt to fire Plaintiff, may not constitute an "ultimate employment decision, the denial of a request for reasonable accommodation could likely have a "detrimental" effect on Plaintiff and clearly relates to the terms and conditions of Plaintiff's employment.

Additionally, Defendant did not contend or argue, and rightly so, that the (4) the September 15, 2017 Final Warning Corrective Action; (5) the September 17, 2017 suspension of Plaintiff,

and, (6) the September 28, 2017 termination of Plaintiff's employment were not actionable adverse employment action.

### i. Plaintiff has Sufficiently Show Inference of unlawful discrimination.

A plaintiff is not required to identify a similarly situated white comparator to prove her discrimination claim, so long as she can establish an inference of unlawful discrimination through other means. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003). We "may infer discriminatory intent from evidence of a general pattern of racial discrimination in the practices of a defendant." *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017). Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, however, "[t]he similarity between comparators . . . must be clearly established in order to be meaningful." [**6] *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011) (internal quotation marks omitted). *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017)

Plaintiff's Complaint alleges as follows: Defendant ha[s] targeted and identified a number of African nurses who were were either fired or forced to resign[] and replaced by Caucasian nurses. Additionally, all of Defendant's per diem African nurses were dismissed and told that Defendant was doing away with per diem nurses. However, a few months later, the per diem positions were filled with Caucasian nurses. Some of [the] per diem African nurses who were discharged, applied for new positions, however, none was rehired by Defendant. Defendant also denied African nurses promotions and positions for which they were qualified, while promoting

Caucasian nurses who were less qualified and experience[d] tha[n] the African nurses. This includes, but is not limited to Jane Kinyua, who [was] denied a nurse practitioner position, and Gloria Nnah who was denied a supervisor positions that was given to Caucasian nurse Celeste Carr. Complaint ¶ 24.

Plaintiff's allegations concerning the discriminatory pattern of adverse employment actions against African nurses are not merely conclusory assertions. Plaintiff has identified names of the African nurses and specific actions that were taken against these nurses. At the pleading stage, Plaintiff is not required to alleged detail "facts concerning (1) the circumstances surrounding the terminations of those employees, (2) who made the decision to terminate each employee, (3) what reason was given for their terminations, (4) the identity of any Caucasian nurses who allegedly replaced the African nurses, and (5) the approximate date of any of the terminations." Plaintiff's factual allegations my further be developed through discovery. Plaintiff pled facts as to individual African nurses Jane Kinyua and Gloria Nnah were denied promotions, specific actions of Defendant to terminate the employment of all its per diem African nurses. Here Defendant asking Plaintiff to pled facts that Plaintiff would necessarily obtain through discovery.

a. **Plaintiff State A Claim For Age Discrimination Under The ADEA And Section 1981.**

"To prevail under the burden-shifting framework, a plaintiff must first show: (1) she is a member of a protected class, that is, 40 years or older; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or she was replaced by a substantially younger person. *Id.* If the plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against [*16] Plaintiff. *Tex. Dep't of Cmty.*

11

*Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." *Tavernier v. Healthcare Mgmt. Assocs.*, Civil Action No. 0:10-01753-MBS, 2012 U.S. Dist. LEXIS 46062, at *15-16 (D.S.C. Mar. 30, 2012)

Plaintiff has plead factual allegations in the Complaint indicating that Plaintiff is a member of the protected class, in that she is more than 40 years, she suffered employment action with the denial of Plaintiff's request for reasonable accommodation, the suspension of Plaintiff, the final corrective action issued to Plaintiff and the termination of Plaintiff's employment. Further, Plaintiff has alleged that Plaintiff was satisfactorily at the time of the adverse employment actions; and, that a "younger white nurse who was less than forty (40) years old" was treated more favorably than Plaintiff. Complaint ¶ 38.

There is no requirement at the pleading for Plaintiff to "alleged any facts that permit a reasonable inference that age-based discrimination was the primary, decisive factor precipitating the alleged denial of her request for accommodation" as argued by Defendant. To show age as a "decisive factor", impermissible required Plaintiff to show motive in the pleadings.

    **b. Plaintiff Sufficiently Stated A Claim for Disparate Treatment Disability Discrimination.**

To establish a prima facie case of wrongful discharge on the basis of the ADA, a plaintiff must show that: (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met the employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Day v. Morgan*, Civil Action No. 3:10-454-JFA -JRM, 2011 U.S. Dist. LEXIS 86270, at *15 (D.S.C. May 5, 2011)

Plaintiff alleged that in "January 2017 Plaintiff went on medical leave for treatment after Plaintiff was diagnosed with cancer. On May 30, 2017 Plaintiff returned to work from medical

leave. P8-9 Plaintiff further alleged as to adverse action the corrective action the September 15, 2017 Final Warning Corrective Action; (5) the September 17, 2017 suspension of Plaintiff, and, (6) the September 28, 2017 termination of Plaintiff's employment, and "Throughout Plaintiff's employment, Plaintiff performed satisfactorily and commendably", p.7. The adverse employment actions here occurred under circumstances that raise a reasonable inference of unlawful discrimination, in that these actions were taken in the context of Defendant's knowledge of Plaintiff medical condition, denied Plaintiff request for reasonable accommodation arising from Plaintiff's medical condition and directed Plaintiff to extended medical leave or go to another nursing unit due to Plaintiff's medical condition. Furthermore, Plaintiff did not allege "that the July 11, 2017 personnel meeting and the July 5, 2017 denial of her request for accommodation" were the only adverse action taken by Defendant in its disability discrimination of Plaint, as Defendant contends.

Defendant claim Plaintiff fails to state claim for disparate treatment under the ADA because she fails to allege that she had a disability under either the "actual disability" or "regarded as" prong at time of the alleged adverse employment actions."

Admittedly Plaintiff could have pled more factual allegations regarding Plaintiff's disability after Plaintiff returned to work in June 2017. However, an inference as to Plaintiff's disability after June 2017 can be drawn from Plaintiff's request for accommodation on the basis of Plaintiff's cancer diagnosis and treatment. Furthermore, Defendant's directive to Plaintiff to take extended medical leave is strong inference that Defendant regarded Plaintiff as a person with a medical disability.     Complaint ¶¶ 12, 13.

**a. Plaintiff Sufficiently Stated A Claim For Failure To Accommodate Under The ADA.**

To establish a prima facie failure-to-accommodate claim, plaintiff must show that: (1) she was an individual who had a disability within the meaning of the ADA; (2) defendants knew of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) defendants refused to make such accommodations. Id. (citation omitted). *Wigger v. CVS Pharmacy, Inc.*, No. 2:15-cv-01122-DCN, 2017 U.S. Dist. LEXIS 158361, at *17 (D.S.C. Sep. 27, 2017)

Although Plaintiff did not specifically alleged that Plaintiff was disabled after Plaintiff returned to work in June 2017, Plaintiff pled sufficient fact establishing by inference that Plaintiff was disable when Defendant refuse to provide Plaintiff with a reasonable accommodation in July 2017. Complaint ¶¶ 7, 8, 9, 10, 11. Defendant further argue that Plaintiff's claim fails because she has not alleged facts showing the essential functions of her position and that her requested accommodation was needed for her to continue working. However, Plaintiff avers in the Complaint that "With or without the reasonable accommodations Mrs. Iwebo could have performed the essential functions of her job." Complaint ¶ 46. Therefore Plaintiff's claim for failure to accommodate should not be dismissed on Defendant's arguments that Plaintiff did not specifically allege a disability after June 2017 or that Plaintiff to not plead that Plaintiff could perform the essential functions of her job with or without the request reasonable accommodation.

**b. Plaintiff State A Claim For Retaliation Under Title VII And Section 1981.**

    **i.   Plaintiff's September 6, 2017 email constitute protected activity under Title VII or Section 1981.**

Protected activity includes an employee's opposition to what he or she believes is an unlawful employment practice. This opposition encompasses "utilizing informal grievance procedures as well [**13] as staging informal protests and voicing one's opinions in order to bring

attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). The Fourth Circuit noted that while individual acts may be scrutinized to determine "their nature, purpose, and nexus to the alleged objective," the plaintiff's conduct must be examined "*as a whole*." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). This inquiry first looks to whether the employee "communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276, 129 S. Ct. 846, 172 L. Ed. 2d 650 (2009). If this first question is answered in the affirmative, then a court considers whether this communicated belief concerns a practice that is "actually unlawful under Title VII" or that the employee "reasonably believes to be unlawful." *Boyer—Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015). *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 248 (D. Md. 2016)

Plaintiff alleges that "[o]n or about September 6, 2017, Plaintiff reported a complaint to Plaintiff's nurse manager, Ms. Markov. Plaintiff reported that the shift coordinator, Ms. Celeste Carr, harassed, humiliated and attempted to fire Plaintiff because Plaintiff 'was in the milieu office . . . looking up treatment related information' for a patient." Complaint ¶ 16.

In is clear that Plaintiff's complaint of humiliation and harassment in the September 6, 2017 email, is communicating to her employer, "to her employer a belief that the employer has engaged in . . . a form of employment discrimination." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276, 129 S. Ct. 846, 172 L. Ed. 2d 650 (2009). This is so, because a reasonable employee would reasonable consider or believe harassment to be unlawful and discriminatory, without saying the word. "If this first question is answered in the affirmative, then a court considers whether this communicated belief concerns a practice that is "actually

unlawful under Title VII" or that the employee "reasonably believes to be unlawful." *Boyer— Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015). *Bowman v. Balt. City Bd. of Sch. Comm'rs,* 173 F. Supp. 3d 242, 248 (D. Md. 2016) Here Plaintiff' communication concerns harassment, with is unlawful under Title VII, and is therefore protected activity.

      ii.    **Plaintiff can show a causal connection between Plaintiff's Protected Activities and Defendant's Adverse Actions Against Plaintiff.**

Although a plaintiff may not conclusory assert the existence of a "causal connection," the presence of a "close" temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element). *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 249 (D. Md. 2016) Courts in this circuit have found, "sufficient casual connection between that warning and plaintiff's exercise of protected activity where (1) the warning was issued in connection with plaintiff's expression of her belief that defendant was continuing to discriminate against African-American women, and (2) Mr. Lassiter – the same individual who received the promotion over plaintiff in the action forming the basis for plaintiff's discrimination charges – initiated the written counseling warning. *Christmas v. N.C. Dep't of Admin.*, No. 5:09-CV-346-FL, 2011 U.S. Dist. LEXIS 52300, at *34 (E.D.N.C. May 16, 2011)

In this case, there is a close relationship in time between Plaintiff's September 6, 2017 protected activities and Defendant's September 15, 2017 action to issued Plaintiff a final corrective action which predicated Plaintiff's termination on September 28, 2017.

Defendant also argue here that Plaintiff "fails to allege facts showing that Sheppard Pratt had knowledge of her alleged protected activity at the time of the alleged adverse actions."

However, in the instance of the September 6, 2017 email complaint of harassment, Defendant had direct knowledge. As to Defendant's notice of the filing of Plaintiff's EEOC Charge, date of the Notice issued to Defendant by the EEOC is not conclusive proof of when defendant had actual notice or knowledge of Plaintiff EEOC complaint. Plaintiff could very well pled factual allegations that defendant employees, agents, etc., had knowledge, imputed to defendant.

    **c. The Court Should Plaintiff an Opportunity to Amend Pleadings**

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States,* 736 F.3d 296, 300 (4th Cir. 2013).

A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits. *See* Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 222 (4th Cir. 2001) (en banc); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims."); *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot

also be [**20] dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render. . . . 'No jurisdiction' and 'with prejudice' are mutually exclusive." (internal citation omitted)). *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands*, LLC, 713 F.3d 175, 185 (4th Cir. 2013)

### D.  CONCLUSION

WHEREFORE, because Plaintiff Complaint and Jury Demand properly set forth claims on which relief can be granted and state plausible claims "for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" Plaintiff asks the Court to deny Defendant's Motion to Dismiss

Respectfully Submitted,

*/s/ George A. Rose*
_____
George A. Rose, Esq., (Bar No. 26086)
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305
Baltimore, MD.  21202
Telephone #: 410-727-7555
Facsimile #: 443-320-0962
Email: grose@roselawfirm.net
Attorney for *Plaintiff Jane Iwebo*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of January 2020, a copy of the foregoing Plaintiff's Response in Opposition to Motion to Dismiss  and Memorandum, and Proposed Order, was electronically filed and served upon, and/or mailed to: Bruce S. Harrison, Esq., (bsh@shawe.com) and Alexander I. Castelli (aic@shawe.com)  at  SHAWE ROSENTHAL LLP, One South Street, Suite 1800, Baltimore, MD 21202, attorneys for Defendant.

 */s/ George A. Rose*
GEORGE A. ROSE, ESQ.