**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JANE IWEBO

    Plaintiff,

    v.                             Civil No.: BPG-19-3008

SHEPPARD PRATT HEALTH SYSTEM, INC.

    Defendant

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Currently pending before the court are defendant's Motion to Dismiss Plaintiff's Complaint ("Motion") (ECF No. 11), plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition") (ECF No. 15), and defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint ("Reply") (ECF No. 19).  The issues are fully briefed, and no hearing is necessary.  Loc. R. 105.6.  For the reasons stated below, defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 11) is granted.

## I.     <u>BACKGROUND</u>

Except as otherwise noted, the following facts are alleged by plaintiff in her Complaint. (ECF No. 1).  Plaintiff brings this employment discrimination action against defendant, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, <u>et seq.</u>; the Civil Rights Act of 1866, as amended, ("Section 1981"), 42 U.S.C. § 1981; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 <u>et seq.</u>; and the Americans with

Disabilities Act, as amended, ("ADA"), 42 U.S.C. §§ 12101, <u>et seq.</u>, based on a series of events which culminated in her termination from her position as a registered nurse.

Plaintiff, a black female of Nigerian national origin, was hired as a registered nurse by defendant, Sheppard Pratt Health System, Inc., on or about February 6, 2005.  (ECF No. 1 ¶¶ 2, 7).  Plaintiff was more than 40 years old at all times relevant to this case.  (<u>Id.</u> ¶ 2).  In January 2017, plaintiff went on medical leave for cancer treatment.  (<u>Id.</u> ¶ 8).  On or about May 30, 2017, plaintiff returned to work from medical leave and was assigned to work on the night shift, which was her regularly assigned shift.  (<u>Id.</u> ¶ 9).  On or about June 30, 2017, plaintiff requested an accommodation to work the day shift due to her medical condition and based on her oncologist's recommendation.  (<u>Id.</u> ¶ 10).  This request was denied on or about July 5, 2017 by plaintiff's unit manager, Ms. Amanpreet Bahra, and the chief nursing officer, Ms. Ernestine Cosby.  (<u>Id.</u> ¶ 11).  Thereafter, on or about July 11, 2017, Ms. Bahra and Ms. Cosby told plaintiff to either take extended medical leave or work in another unit.  (<u>Id.</u> ¶ 12).

Plaintiff alleges that defendant engaged in the following discriminatory acts against her:

1. defendant's denial of plaintiff's accommodation request to work the day shift, (<u>id.</u> ¶ 11);

2. the personnel meeting where Ms. Amanpreet and Ms. Crosby told plaintiff to take extended medical leave or work in another unit, (<u>id.</u> ¶ 12);

3. defendant's hiring of a "new, younger, Caucasian" employee for the day shift despite plaintiff's request to be scheduled for the day shift, (<u>id.</u> ¶ 13);

4. the shift coordinator's, Ms. Celeste Carr, harassment, humiliation, and attempt to fire plaintiff because plaintiff "was in the milieu office . . . looking up treatment

related information" for a patient, (<u>id.</u> ¶ 16) ("harassment and attempted firing by the shift coordinator");

5.  plaintiff's receipt of a Final Warning Corrective Action Report from her supervisors for violating defendant's policies and rules pertaining to: "(1) personal use of [d]efendant's computer; (2) refusal and insubordination; (3) giving a false statement; and, (4) refusal to accept assignment" ("final warning"), (<u>id.</u> ¶ 18);

6.  being placed on administrative leave on or around September 18, 2017 pending an investigation regarding "what was said" to a staff member during plaintiff's September 17, 2017 end of shift report ("suspension"), (<u>id.</u> ¶ 20); and

7.  plaintiff's termination on September 28, 2017 for alleged hostile behavior toward staff arising out of the September 17, 2017 end of shift incident.  (<u>Id.</u> ¶ 23).

In her Complaint, plaintiff additionally alleges that defendant has a pattern of discrimination against African nurses.  (<u>Id.</u> ¶ 24).  Plaintiff complains that "[o]ver the past two years," at least nine African nurses "were either fired or forced to resign and replaced by Caucasian nurses."  (<u>Id.</u>)  Plaintiff claims that "all of [d]efendant's per diem African nurses were dismissed and told that [d]efendant was doing away with per diem nurses[, h]owever, a few months later the[se] per diem positions were filled with Caucasian nurses[,]" despite some of the African nurses reapplying for their previous positions.  (<u>Id.</u>)  Moreover, plaintiff alleges that defendant has "denied African nurses promotions and positions for which they were qualified, while promoting Caucasian nurses who were less qualified and experience[d]."  (<u>Id.</u>)

Plaintiff initiated an EEOC complaint against defendant on or about September 15, 2017. (<u>Id.</u> ¶ 50).  On September 19, 2017, plaintiff filed an EEOC Charge of Discrimination ("EEOC

charge") against defendant for retaliation and race, national origin, age, and disability discrimination.  (Id. ¶ 21).  Plaintiff brings this suit now because more than one hundred and eighty (180) days have passed since she initially filed an EEOC charge and she has not received a right to sue letter from the EEOC.  (Id. ¶ 6).

## II.   <u>STANDARD OF REVIEW</u>

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  <u>See</u> <u>Venkatraman v. REI Sys., Inc.</u>, 417 F.3d 418, 420 (4th Cir. 2005).  A complaint need only state "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  <u>Id.</u> at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination under the <u>McDonell Douglas</u> burden shifting framework because the "prima facie case under <u>McDonnell Douglas</u> . . . is an evidentiary standard, not a pleading requirement." <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 510 (2002).  The Fourth Circuit has made clear that "although a plaintiff 'need not plead facts sufficient to establish a prima facie case of . . . discrimination to survive a motion to dismiss,' the 'pleading standard established in <u>Iqbal</u> and

Twombly applies[.]'" <u>Aletum v. Kuehne + Nagel Co.</u>, Civil No. ELH-19-1972, 2020 WL 1955553, at *10 (D. Md. Apr. 23, 2020) (quoting <u>Woods v. City of Greensboro</u>, 855 F.3d 639, 648 (4th Cir. 2017)).  Therefore, "the question at the motion to dismiss stage is whether the plaintiff has stated 'a plausible claim for relief.'" <u>Id.</u> (citing <u>Ciociola v. Balt. City Bd. of Sch. Comm'rs</u>, Civil No. CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016)).

Pursuant to Rule 12(d), a motion to dismiss for failure to state a claim upon which relief can be granted is converted into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d).  "Matters— such as exhibits—are outside the pleadings if a complaint's factual allegations are not expressly linked to and dependent upon such matters."  <u>Williams v. Branker</u>, 462 F. App'x 348, 352 (4th Cir. 2012).  Courts may consider documents that are "explicitly incorporated into the complaint by reference," <u>Goines v. Valley Cmty. Servs. Bd.</u>, 822 F.3d 159, 166 (4th Cir. 2016) (citing <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)), or submitted by the movant, "so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  <u>Id.</u>  "A document is 'integral' when its '[v]ery existence, and not the mere information it contains, gives rise to the legal rights asserted.'" <u>Rowlette v. Lifebridge Health</u>, Civil No. RDB-18-2706, 2019 WL 5696841, at *2 (D. Md. Nov. 4, 2019) (quoting <u>Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC</u>, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).  "Considering such documents does not convert a motion to dismiss to one for summary judgment."  <u>Id.</u> (citing <u>Goldfarb v. Mayor & City Council of Baltimore</u>, 791 F.3d 500, 508 (4th Cir. 2015)).

Here, defendant's Motion is supported by four exhibits: (1) an August 1, 2017 email from plaintiff to Ms. Cosby and Ms. Bahra regarding the hiring of a new employee for the

"day/evening rotation" (ECF No. 11-2); (2) an email sent from plaintiff to Ms. Phillips, Ms. Cosby, Ms. Williams-Porter, and Ms. Bahra on or about September 6, 2017 regarding the harassment and attempted firing by the shift coordinator (ECF No. 11-3); (3) the EEOC Charge of Discrimination, dated September 19, 2017 (ECF No. 11-4); and (4) the EEOC Notice of Charge of Discrimination, dated October 3, 2017 (ECF No. 11-5).  Plaintiff relies on the August 1, 2017 email, September 6, 2017 email, and EEOC charge to support her allegation that she engaged the following protected activities: (1) when she complained to her managers of bias in their hiring of a new, younger, and Caucasian employee to work the day shift, (ECF No. 1 ¶¶ 13, 50); (2) when she reported that the shift coordinator had "harassed, humiliated[,] and attempted to fire" her, (id. ¶¶ 16, 50); and (3) when she filed an EEOC charge.  (Id. ¶¶ 21, 50).  As a result, the two emails and the EEOC charge are integral to the Complaint because plaintiff explicitly relies on these emails and the EEOC charge in her allegations.  See Carter v. Montgomery Cty., Maryland, Civil No. TDC-18-2249, 2019 WL 3804765, at *2 (D. Md. Aug. 13, 2019) (considering plaintiff's EEOC charge integral to the complaint because plaintiff "relie[d] on and refer[red] to it in his Amended Complaint and [did] not contest its authenticity").  Moreover, plaintiff does not challenge the authenticity of these documents.  Plaintiff does not, however, refer to the EEOC Notice of Charge of Discrimination in her Complaint and this document is not integral to the Complaint.  Rowlette, 2019 WL 5696841, at *2 (stating that a document is integral when its "'[v]ery existence, and not the mere information it contains, gives rise to the legal rights asserted'").  As a result, this exhibit is not integral to plaintiff's Complaint and will not be considered.  Accordingly, the two emails and the EEOC charge provided by defendant will be considered and the Motion will be construed as a motion to dismiss—not a motion for summary judgment pursuant to Rule 12(d) and Rule 56.

## III.   DISCUSSION

Defendant argues that plaintiff's Complaint should be dismissed on two grounds: (1) that plaintiff failed to exhaust her administrative remedies as to the termination related claims; and (2) the allegations are insufficient to state a claim under all counts.

### A.   Exhaustion of Administrative Remedies

Defendant argues that plaintiff failed to exhaust her administrative remedies regarding her termination related claims because she did not raise these claims in her EEOC charge.  (ECF No. 11-1 at 6).  As a result, defendant contends that plaintiff's allegations of termination based on national origin discrimination, race discrimination, and retaliation in violation of Title VII should be dismissed under Rule 12(b)(6).  (Id.)

"If timely raised by the defendant, failure to exhaust administrative remedies warrants dismissal under Rule 12(b)(6)."  Rowlette, 2019 WL 5696841, at *3.  The purpose of the administrative exhaustion requirement is to "ensure[] that the charged party receives notice of the claims it faces."  Id. (citing Chacko v. Patuxent Institution, 429 F.3d 505, 510 (4th Cir. 2005)).  Therefore, "[a] subsequent lawsuit must limit its claims to those included in the administrative charge and those 'reasonably related' to the claims described in the administrative charge."  Id. (citing Evans v. Techs. Applications & Servs., Co., 80 F.3d 954, 962–63 (4th Cir. 1996)).  A Title VII plaintiff can exhaust administrative remedies if a "reasonable investigation of [her] administrative charge would have uncovered the factual allegations set forth in formal litigation."  Chacko, 429 F.3d at 512.

Here, plaintiff alleged retaliation in the EEOC charge that she filed on September 19, 2017.  (ECF No. 11-4 at 2).  In the narrative section, plaintiff claimed that she was "disciplined

through a first and final write-up" shortly after filing a discrimination complaint.  (Id.)  Plaintiff

was then terminated on September 28, 2017, nine days after she filed the EEOC charge.  (ECF

No. 1 ¶ 23).  Although plaintiff does not allege retaliatory termination in her EEOC charge, a

reasonable EEOC investigation into the charge likely would have uncovered the fact that

plaintiff was terminated nine days after filing the charge.  See Smith v. First Union Nat. Bank,

202 F.3d 234, 248 (4th Cir. 2000) (finding exhaustion where both the EEOC charge and the

complaint included claims of retaliation but involved different retaliatory conduct).

Accordingly, the undersigned concludes that dismissal of plaintiff's termination related claims is

not warranted on the grounds that she failed to exhaust her administrative remedies.

### B.  National Origin and Race Discrimination

Counts I and II of the Complaint allege that plaintiff suffered national origin and race

discrimination in violation of Title VII and Section 1981.  (ECF No. 1 ¶¶ 25–34).  Plaintiff

complains that defendant intentionally discriminated against her based on her African and

Nigerian national origin and race and that she suffered the following six adverse employment as

a result of this discrimination: (1) the denial of her reasonable accommodation request to work

the day shift in July 2017; (2) the directive from her managers to take extended leave or work in

a different nursing unit; (3) the harassment and attempted firing by the shift coordinator; (4) the

final warning that plaintiff received; (5) the suspension plaintiff received after the end of her

shift on September 17, 2017; and (6) plaintiff's termination on September 28, 2017.  (Id. 1 ¶¶ 27,

32).  Defendant argues that plaintiff fails to allege facts that satisfy the elements two, three, and

four of a prima facie case of discrimination.  (ECF No. 11-1 at 7).

"Claims of racial discrimination in employment under . . . [Section] 1981 are evaluated

under the Title VII framework."  Swaso v. Onslow Cty. Bd. of Educ., 698 F. App'x 745, 747

(4th Cir. 2017), as amended (Aug. 11, 2017).  Under Title VII, a plaintiff may establish liability by:  "(1) 'demonstrating through direct or circumstantial evidence that [her] race was a motivating factor in the employer's adverse employment action'; or (2) relying on the burden shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Id. (citing Holland v. Wash. Homes, Inc., 487 F.3d 208, 213–14 (4th Cir. 2007)).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . or national origin."  42 U.S.C. § 2000e–2(a).  To establish a claim of disparate treatment under Title VII, a plaintiff must put forth a prima facie case of discrimination alleging that:  "(1) she is a member of a protected class; (2) she 'suffered an adverse employment action'; (3) her job performance was satisfactory; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'"  Swaso, 698 F. App'x at 747 (quoting Adams v. Tr. of Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)).  "The fourth element is met if 'similarly-situated employees outside the protected class received more favorable treatment.'"  Id. (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  Moreover, a plaintiff may satisfy the fourth element by showing "a general pattern of racial discrimination in the practices of a defendant," or by relying on comparator evidence.  Id. at 748.  "While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under Twombly and Iqbal."  Id. at 747–48; see also McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584–85 (4th Cir. 2015) (explaining that a plaintiff is still "required to allege facts to satisfy the elements of a cause of action" under Title VII).  As

plaintiff is a black female of Nigerian origin, she is a member of a protected class.  (ECF No. 1 ¶ 2).

   As to the second element, defendant argues that plaintiff fails to allege adverse actions with regard to the alleged denial of plaintiff's accommodation request, the directive for plaintiff to take extended leave or work in another unit, and the harassment and attempted firing by the shift coordinator.  (ECF No. 11-1 at 8).  As defendant notes, these alleged incidents are not adverse employment actions under Title VII.  An adverse employment action is one that "'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  Holland, 487 F.3d at 219 (quoting James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)).  "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'"  Booth v. Cty. Exec., 186 F. Supp. 3d 479, 485 (D. Md. 2016) (citing Boone v. Goldin, 178 F.3d 253, 255 (4th Cir.1999)).  The denial of plaintiff's request to work the day shift and the directive for plaintiff to take extended leave or work in another unit "had no effect on [plaintiff's] pay, benefits, job title, or responsibilities."  Chang Lim v. Azar, 310 F. Supp. 3d 588, 601 (D. Md. 2018) (finding that the denial of plaintiff's flexible work plan was not an adverse action because it "did not affect his pay or benefits, downgrade his title, or reduce his job responsibilities").  Likewise, the alleged harassment and attempted firing by the shift coordinator is not an adverse action.  Harris v. Esper, Civil No. JKB-18-3562, 2019 WL 5423768, at *6 (D. Md. Oct. 23, 2019) (stating that threatened termination itself does not rise to the level of an adverse employment action in a discrimination claim); see also Cepada v. Bd. of Educ. of Baltimore Cty., 814 F. Supp. 2d 500, 515 (D. Md. 2011) (stating that being "yelled at" and "criticized" are not adverse employment actions under the more lenient standard applied to

Title VII retaliation claims); <u>Blount v. Dep't of Health & Human Servs.</u>, 400 F. Supp. 2d 838, 842 (D. Md. 2004) (holding that "disparaging remarks made by a supervisor," including statements alleged to have embarrassed the employee in front of coworkers, are not adverse employment actions).  As a result, plaintiff has failed to allege a claim for adverse action with respect to these three allegations.  Plaintiff's allegations regarding the remaining alleged adverse actions (<u>i.e.</u>, plaintiff's final warning, suspension, and termination), do meet the pleading standard for adverse actions.  <u>See</u> <u>Holland</u>, 487 F.3d at 219; <u>see also</u> <u>Toulan v. DAP Prods., Inc.</u>, Civil No. CCB-05-2254, 2007 WL 172522, at *5 (D. Md. Jan. 17, 2007) (finding that formal discipline letters placed in employee's file that threatened termination could be an adverse action in the retaliation context).

As to the third element, defendant argues that plaintiff "alleges no facts regarding whether [her] job performance was satisfactory."  (ECF No. 11-1 at 8).  Satisfactory job performance can be shown through "unbiased factual . . . assertion[s] that [plaintiff] was meeting [defendant's] legitimate expectations as an employee."  <u>Jeffries v. Wal-Mart Stores E.</u>, Civil No. GJH-15-473, 2016 WL 3771241, at *5 (D. Md. July 11, 2016), <u>aff'd sub nom.</u> <u>Jeffries v. Wal-Mart Stores E., L.P.</u>, 669 F. App'x 634 (4th Cir. 2016).  In her Complaint, plaintiff alleges that throughout her employment with defendant, she "performed satisfactorily and commendably." (ECF No. 1 ¶ 7).  Plaintiff, however, fails to allege any factual support for this assertion.  A plaintiff's own allegation "cannot establish that she was meeting [her employer's] expectations[,]" rather "[i]t is the perception of the decision maker which is relevant."  <u>Jeffries</u>, 2016 WL 3771241, at *5.  Because plaintiff does not support her own conclusory allegations as to her performance, she has not plead facts sufficient to state a claim as to the third element.

As to the fourth element, defendant argues that plaintiff "fails to allege that the adverse employment actions occurred under circumstances giving rise to an inference of unlawful discrimination." (ECF No. 11-1 at 8). Plaintiff alleges three viable adverse actions: (1) the final warning; (2) suspension; and (3) termination. (ECF No. 1 ¶¶ 27, 32). In order to sufficiently plead that these adverse actions occurred under circumstances giving rise to an inference of unlawful discrimination, plaintiff must show "a general pattern of racial discrimination in the practices of a defendant" or rely on comparator evidence. Swaso 698 F. App'x at 748. "As the Fourth Circuit explained, '[w]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, . . . "[t]he similarity between comparators . . . must be clearly established in order to be meaningful."'" Conney v. Ameri-Klean Services, Inc., 2018 WL 1075808, at *3 (D. Md. Feb. 26, 2018) (quoting Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008)).

Plaintiff attempts to show a pattern of discrimination by alleging that "based on . . . information and belief, [d]efendant ha[s] targeted African nurses, for termination and replace[d] them with Caucasian nurses." (ECF No. 1 ¶ 24). Plaintiff additionally alleges that "all of [d]efendant's per diem African nurses were dismissed" but these positions were later filled by Caucasian nurses, and that defendant denied African nurses promotions and other positions, such as nurse practitioner and supervisor positions, for which they were qualified. (Id.) These allegations are "simply too conclusory" because "[o]nly speculation can fill the gaps in [plaintiff's] complaint." McCleary-Evans, 780 F.3d at 586; see also Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020) (stating that the "mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was

motivated by bias" where the plaintiff provided no additional facts to support a reasonable inference that defendant was motivated by bias in any of its decisions).

To rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, a plaintiff must show "that the comparator is similarly situated in all relevant aspects." Ryan v. McAleenan, Civil No. ELH-19-1968, 2020 WL 1663172, at *18 (D. Md. Apr. 3, 2020). To be "similar in all relevant aspects," a plaintiff must allege facts such as, she and the comparator "dealt with the same supervisor, [were] subject to the same standards, and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (quoting Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010)). Plaintiff has not alleged facts that there was a similarly situated comparator for any of her Title VII and Section 1981 discrimination claims. The closest plaintiff comes to identifying a comparator is by alleging that a "Caucasian staff" was hired to fill the day shift position that plaintiff had requested. (ECF No. 1 ¶ 13). Nowhere does plaintiff allege facts to show that she was comparable to the newly hired employee in terms of "work histories, qualifications, or responsibilities." Ryan, 2020 WL 1663172, at *19. Plaintiff similarly fails to identify a proper comparator in her pattern of discrimination allegation because plaintiff does not link any of her own claims to the other African nurses who were terminated or the Caucasian nurses who allegedly replaced them. See id. at *18–19. For example, plaintiff does not allege that she was replaced by a Caucasian nurse, plaintiff was not a per diem nurse or a nurse practitioner like the other nurses that plaintiff identifies, and plaintiff does not allege that she was denied any promotion or position for which she was qualified in favor of a Caucasian nurse. In addition, as defendant notes, the pattern of discrimination that plaintiff alleges is based on allegations which took place entirely after

13

plaintiff's employment ended, that is, plaintiff refers to a period "[o]ver the past two years," (ECF No. 1 ¶ 24), which covers the period after plaintiff's termination.  As a result, the Complaint's "conclusory assertions that the plaintiff and a co-worker are on equal footing is insufficient to nudge a discrimination claim across the line from conceivable to plausible." Ryan, 2020 WL 1663172, at *19.  Accordingly, Counts I and II must be dismissed.

### C.  Age Discrimination

Count III of the Complaint alleges age discrimination in violation of the ADEA and Section 1981.  (ECF No. 1 ¶¶ 35–40).  Plaintiff alleges that she suffered age discrimination when defendant hired a younger nurse for the day shift after defendant refused plaintiff's request to be scheduled for the day shift instead of plaintiff's regularly scheduled night shift.  (Id. ¶¶ 9–11, 13, 38).  Defendant argues that plaintiff's Complaint must be dismissed because she "has not alleged any facts that permit a reasonable inference that age-based discrimination was the primary, decisive factor precipitating the alleged denial of her request for accommodation."  (ECF No. 11-1 at 11).

Plaintiff titled Count III as "Age Discrimination in Violation of the ADEA & Section 1981," (ECF No. 1 at 9), but, as defendant notes, Section 1981 applies to race-based discrimination, not to age-based discrimination.  (ECF No. 11-1 at 10); Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020) (stating that to prevail on a Section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right"); Cepada v. Bd. of Educ. of Baltimore Cty., Civil No. WDQ-10-0537, 2010 WL 3824221, at *4 (D. Md. Sept. 27, 2010) ("[t]o state a claim under § 1981, a plaintiff must demonstrate that . . . the defendant intended to

discriminate on the basis of race").  Accordingly, plaintiff's claim in Count III that she suffered age discrimination under Section 1981 must be dismissed.

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show that: "(1) [she] was over 40 years of age at the relevant time; (2) [she] was qualified for the position and meeting legitimate expectations; (3) [she] was nevertheless subjected to an adverse employment action; and (4) substantially younger individuals with comparable qualifications were treated more favorably."  Smith v. Potomac Elec. Power Co., Civil No. TDC-19-1764, 2020 WL 1904707, at *4 (D. Md. Apr. 17, 2020) (citing Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019)).  Moreover, a "plaintiff must also allege 'that age was not merely a motivating factor of the challenged adverse employment action but was in fact its "but-for" cause.'"  Gray-Koyier v. Baltimore Cty. Pub. Sch., Civil No. MJG-17-1888, 2018 WL 1505789, at *4 (D. Md. Mar. 27, 2018) (citing Hartman v. Univ. of Md. at Balt., 595 Fed. App'x 179, 181 (4th Cir. 2014)).  "[A]t the motion-to-dismiss stage, the plaintiff need only allege facts that, taken as true, permit a reasonable inference that age-based discrimination was the primary, decisive factor precipitating the adverse action."  Anglemyer v. WCS Constr., LLC, Civil No. PWG-18-2198, 2019 WL 3458951, at *3 (D. Md. July 31, 2019) (citing Buchhagen v. ICF Int'l, Inc., 545 F. App'x 217, 220 (4th Cir. 2013)).

Plaintiff alleges that she is a member of a protected class, as she was over the age of forty at "all times relevant to this case."  (ECF No. 1 ¶¶ 2, 36).  Plaintiff, however, fails to allege sufficient facts to support the contention that she suffered age-based discrimination.  Plaintiff's

entire allegation is that defendant "[gave] the shift to a younger white nurse who was less than forty (40) years old." (Id. ¶ 38). First, as discussed above, the denial of plaintiff's request to work the day shift is not an adverse action because it "had no effect on [plaintiff's] pay, benefits, job title, or responsibilities." Chang Lim, 310 F. Supp. 3d at 601; see Pollard v. Baltimore Cty. Bd. of Educ., 65 F. Supp. 3d 449, 456 (D. Md. 2014) (conducting the same adverse action analysis for ADEA and Title VII discrimination claims). Second, plaintiff's allegation is not accompanied by any other supporting facts to permit the reasonable inference that plaintiff's age was the but-for cause of the alleged adverse action. Gray-Koyier, 2018 WL 1505789, at *4–5 (finding the allegation that plaintiff was replaced by a "younger man" insufficient because plaintiff did not indicate how much younger the replacement was than she); see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) (stating that "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class"). Thus, the Complaint presents "no more than a 'threadbare recital[] of the elements of a cause of action for age discrimination, supported by mere conclusory statements.'" Gray-Koyier, 2018 WL 1505789, at *5 (citing Iqbal, 556 U.S. at 678). As stated in Twombly, these "labels and conclusions, [together with] a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp., 550 U.S. at 555. Accordingly, plaintiff's claim in Count III that she suffered age discrimination in violation of the ADEA must be dismissed.

### D.  Disability Discrimination

Counts IV and V of the Complaint allege violations of the ADA, including disparate treatment and failure to accommodate. (ECF No. 1 ¶¶ 41–48). Defendant argues that plaintiff's

ADA claims must be dismissed because she has not alleged facts showing that she was disabled or a qualified individual under the ADA. (ECF No. 11-1 at 13).

Under the ADA, an employer is prohibited from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "To establish a disparate treatment claim, [p]laintiff must allege: (1) [s]he is a member of a protected class; (2) [s]he has satisfactory job performance; (3) [s]he was subjected to adverse employment action; and (4) similarly situated employees outside [her] class received more favorable treatment." Lipscomb v. Techs., Servs., & Info., Inc., Civil No. DKC-09-3344, 2011 WL 691605, at *12 (D. Md. Feb. 18, 2011) (citing Holland, 487 F.3d at 214). In a failure to accommodate case, a plaintiff must allege "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citing Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)). "No matter the type of discrimination alleged . . . a plaintiff must establish first that [s]he was 'a qualified individual with a disability.'" Shin v. Univ. of Maryland Med. Sys. Corp., 369 F. App'x 472, 479 (4th Cir. 2010) (quoting Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1022 (7th Cir. 1997)). A qualified individual with a disability is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8); see Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995). Thus, to establish that she is a qualified individual, plaintiff must show that (a) she was disabled and (b) she was qualified to perform the essential functions of her position.

### 1. Disability Analysis

Defendant argues that plaintiff fails to state a claim for disparate treatment and failure to accommodate under the ADA because she fails to allege that she had a disability at the time of the alleged adverse employment actions.  (ECF No. 11-1 at 12–13).  Under the ADA, "a 'disability' may take any of the following forms: (1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)."  Summers v. Altarum Inst., Corp., 740 F.3d 325, 328 (4th Cir. 2014) (citing 42 U.S.C. § 12102(1)).  "To survive a Motion to Dismiss, the plaintiff must explain how the alleged disability meets one of these criteria; merely parroting the statutory language does not suffice."  Richardson v. Maryland Transit Admin., Civil No. RDB-18-0884, 2019 WL 1002597, at *7 (D. Md. Mar. 1, 2019) (citing Wicomico Nursing Home v. Padilla, 910 F.3d 739, 751 (4th Cir. 2018)).  Moreover, "the date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability.'" E.E.O.C. v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000).

Plaintiff alleges that her cancer diagnosis in January 2017 caused her to become "incapacitated, or substantially limited in one or more major life activities[] until June 2017." (ECF No. 1 ¶ 41).  Plaintiff further alleges that the discrimination she suffered as a result of her disability occurred on or about July 5, 2017, when her request to be scheduled for the day shift was denied, and on or about July 11, 2017, when her manager directed her to take extended medical leave or to work in a different unit.  (Id. 1 ¶¶ 11–12, 43, 46).  Although cancer may qualify as a disability under the ADA, Jeffries, 2016 WL 3771241, at *3 (finding that plaintiff sufficiently alleged that breast cancer was a disability under the ADA because plaintiff asserted that it weakened her immune system), by plaintiff's own allegations she was only disabled due to

18

cancer until June 2017.  (ECF No. 1 ¶ 41).  The alleged adverse actions did not occur until July 2017.  (Id. ¶¶ 11–12, 43, 46).  As a result, plaintiff has failed to plausibly allege that she is disabled under the "actual disability" prong of the disability analysis.  Summers, 740 F.3d at 328; E.E.O.C., 216 F.3d at 379.  In addition, plaintiff makes no allegation and pleads no facts to support that she is disabled under the "record-of" prong.

Plaintiff additionally alleges that defendant perceived her to be disabled, (ECF No. 1 ¶ 41), and argues that an inference as to her disability can be drawn from her request for an accommodation on the basis of her cancer diagnosis and treatment.  (ECF No. 15-1 at 13). Defendant argues that this allegation is conclusory and not supported by any factual allegations. (ECF No. 11-1 at 13).  A claim under the "regarded as" prong does not require a plaintiff to show an actual impairment or a record thereof, Munoz v. Baltimore Cty., Md., Civil No. RDB-11-2693, 2012 WL 3038602, at *7 (D. Md. July 25, 2012) (citing ADA Amendments Act of 2008, Pub. L. 11325, 122 Stat. 3553, amending 42 U.S.C. § 12102(3)), however, a plaintiff must allege why she was regarded as having a disability.  Id. (concluding that a plaintiff sufficiently alleged that his employer "perceived" him as disabled because plaintiff stated that his disability was "due to his knee injuries and any medical limitations that he . . . sustained as a result of an accidental injury on the job").  Here the only facts plaintiff alleges regarding her cancer diagnosis are that she took medical leave for treatment in January 2017, (ECF No. 1 ¶ 8), she returned from medical leave on May 30, 2017, (id. ¶ 9), and her cancer diagnosis caused her to become "incapacitated, or substantially limited in one or more major life activities[] until June 2017."  (Id. ¶ 41).  These facts are not sufficient to show "regarded as" disability because, as discussed above, plaintiff clearly states that she was incapacitated or substantially limited only until June 2017 and she does not allege any other facts to support her allegation that defendant

perceived her to be disabled after June 2017.  Richardson, 2019 WL 1002597, at *8 (finding that plaintiff failed to allege "regarded as" disability where the "few factual allegations of the [c]omplaint" did not support plaintiff's assertion that her employer "regarded and perceived [her] as an individual with a disability").  Indeed, plaintiff's allegation that defendant perceives her to be disabled merely "parrot[s] the statutory language" defining disability.  Id. at *7.  As a result, plaintiff has failed to plausibly allege that she is disabled under the "regarded as" prong of the disability analysis.  Id. (stating that the "plaintiff must explain how the alleged disability meets [the criteria of one of the disability analysis prongs]; merely parroting the statutory language does not suffice").

## 2.   Qualified Individual Analysis

Defendant additionally argues that plaintiff fails to state a claim for disability discrimination because she fails to "allege[] facts that she was a qualified individual under the ADA."  (ECF No. 19 at 6).  Defendant maintains that, first, plaintiff failed to identify the essential functions of her job and, second, plaintiff "alleged that she could perform the unidentified essential functions of her job without reasonable accommodation."  (Id. at 7).

"The qualified individual inquiry proceeds in two steps."  Carter, 2019 WL 3804765, at *4–5. First, the court must consider "whether the complaint has alleged that the plaintiff 'could perform the essential functions of the job,' consisting of 'functions that bear more than a marginal relationship to the job at issue.'"  Id. at *5 (citing Tyndall v. National Educ. Centers, Inc. of California, 31 F.3d 209, 213 (4th Cir. 1994)).  Second, if the plaintiff cannot perform the essential functions of the job, the plaintiff must allege "whether any reasonable accommodation by the employer would enable [the plaintiff] to perform those functions."  Id. (citing Tyndall, 31 F.3d at 213).  "If the plaintiff's complaint fails to put forward allegations that the plaintiff meets

the qualified individual standard, the complaint may be dismissed for failure to state a claim." Id. at *4.

In her Complaint, plaintiff pleads no factual content as to the requirements of her job or her qualifications.  (See ECF No. 1).  Plaintiff's allegation that she is "qualified and able to perform the essential functions of her job as a registered nurse," (id. ¶ 41), is "merely a legal conclusion that is couched as an allegation of fact."  Rubino v. New Acton Mobile Indus., LLC, 44 F. Supp. 3d 616, 622 (D. Md. 2014).  In Rubino, plaintiff's only allegations related to his employment as Vice President of Sales were that: "'in order for him to perform his job, he needed to receive [a] reasonable accommodation'; 'in another effort to obtain an accommodation that could allow him to successfully perform his job . . . [he] asked for [a] reasonable accommodation . . .'; and that he is 'capable of performing the essential functions of his job with a reasonable accommodation.'"  Id. at 623.  The Rubino court found that it was not possible to tell what the plaintiff's job involved because he did not allege "even a cursory description" of his work.  Id.  As a result, the Rubino court found that the plaintiff failed to state a plausible claim for relief.  Id. at 622–23.  Here, plaintiff's only allegations regarding her employment position are that despite her alleged disability, she is "otherwise qualified and able to perform the essential functions of her job as a registered nurse," (ECF No. 1 ¶ 41), "[w]ith or without the reasonable accommodations [she] could have performed the essential functions of her job[,]" (id. ¶ 46), and "at all times pertinent hereto, [she] was qualified to perform the essential functions of her job with or without the reasonable accommodation(s)."  (Id. ¶ 47).  As in Rubino, plaintiff fails to allege "even a cursory description" of her work.  Moreover, and as defendant notes, (ECF No. 19 at 7), plaintiff fails to allege that she needed a reasonable accommodation to perform the essential functions of her job as a nurse.  Carter, 2019 WL 3804765, at *5 (stating that the

plaintiff must allege "whether any reasonable accommodation by the employer would enable [the plaintiff] to perform those functions").  Plaintiff's own allegations are inconsistent and fatal to her claim because plaintiff states that she could perform the essential functions of her job without accommodation, (ECF No. 1 ¶ 46), while also alleging that defendant violated the ADA for not providing her an accommodation.  (Id.)  Plaintiff makes no allegation that she needed an accommodation to work the day shift in order to do her job and plaintiff does not state why she could not work the night shift.  As a result, plaintiff's Complaint fails to adequately plead that she is a qualified individual who could perform the essential functions of the job.  Carter, 2019 WL 3804765, at *5; Munoz, 2012 WL 3038602, at *7–8 (finding that plaintiff's "bare assertions that he 'can perform all of the essential functions' [of his position as an EMT firefighter] and is a 'qualified individual'" failed to state a claim that he is a qualified individual with a disability under the ADA).

Because plaintiff fails to allege facts showing that she is a qualified individual with a disability or a member of a protected class, her disparate treatment and failure to accommodate claims fail, Lipscomb, 2011 WL 691605, at *12, and the court need not reach a conclusion on the remaining elements of these claims.[1]  Accordingly, plaintiff's ADA claims are dismissed for failure to state a claim.  Id. at *14.

---

[1] As relates to plaintiff's disparate treatment claim, plaintiff alleges that she was discriminated against when her request to work the day shift was denied and when she was directed to take extended leave or work in another unit.  (ECF No. 1 ¶ 43).  As discussed above, the denial of plaintiff's request to work the day shift and the directive for plaintiff to take extended leave or work in another unit are not adverse employment actions because they "had no effect on [plaintiff's] pay, benefits, job title, or responsibilities."  Chang Lim, 310 F. Supp. 3d at 601; see Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001) (stating that courts use Title VII precedent in ADA cases).  As a result, plaintiff fails to allege an adverse employment action with respect to her disparate treatment claim.  Plaintiff also alleges that defendant treated similarly situated employees more favorably than plaintiff by providing those employees reasonable

### E.  **Retaliation**

Count VI of the Complaint alleges that plaintiff suffered retaliation in violation of Title VII and Section 1981 for engaging in a protected activity.  (ECF No. 1 ¶¶ 49–53).  Plaintiff alleges that she "reasonably believe[d]" that she engaged in a protected activity when she: (1) emailed a complaint to her managers on August 1, 2017 regarding the hiring of a white employee under 40 years old for the day shift, after denying plaintiff's request to work the day shift; (2) complained on September 6, 2017 that the shift manager harassed and intimidated plaintiff; (3) initiated an EEOC complaint against defendant on September 15, 2017; and (4) filed an EEOC charge against defendant on September 19, 2017.  (Id. ¶ 50).  The retaliatory adverse actions that plaintiff alleges are: (1) the final warning; (2) suspension; and (3) termination.   (Id. ¶ 51). Defendant argues that plaintiff fails to state a retaliation claim under Title VII and Section 1981 because plaintiff did not engage in a protected activity prior to her EEOC charge and there is no causal connection between her EEOC charge and the alleged adverse actions.  (ECF No. 11-1 at 15–17).

To establish a prima facie case of retaliation under Title VII and Section 1981, the plaintiff must show: (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the adverse employment action.  Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216–17 (4th Cir. 2016).

"An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits."  Jenkins v. Gaylord Entm't Co., 840 F. Supp. 2d 873, 880 (D. Md. 2012).

---

accommodations, (ECF No. 1 ¶ 43), however, this allegation is flawed because plaintiff does not provide any detail on employees outside the class that were treated better than her.

"For such activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct [] she opposes constitutes unlawful discrimination under Title VII." Id. at 881 (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001)). "Opposition almost always arises when an employee communicates to her employer her reasonable belief that the employer has engaged in discrimination." Id. (citing Crawford v. Metro. Gov't of Nash. and Davidson Cty., Tenn., 555 U.S. 271, 276 (2009)). "[T]the Fourth Circuit has held that the filing of an EEOC complaint generally constitutes protected activity." Kearns v. Northrop Grumman Sys. Corp., Civil No. ELH-11-1736, 2014 WL 2170781, at *10 (D. Md. May 23, 2014).

As to the second element, "[a] plaintiff can demonstrate that an employer 'acted adversely' by showing that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Lewis v. Baltimore City Bd. of Sch. Commissioners, 187 F. Supp. 3d 588, 595 (D. Md. 2016) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). An adverse action in a retaliation claim must be "materially adverse." Burlington N., 548 U.S. at 68. This requirement "seeks to differentiate those harms that work a 'significant' detriment on employees from those that are relatively insubstantial or 'trivial.'" Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015) (quoting Burlington N., 548 U.S. at 68).

Finally, as to the third element, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). A "plaintiff must establish that when taking the adverse action, an employer had knowledge that the plaintiff had engaged in protected activity." Finnegan v. Dep't of Pub. Safety & Corr. Servs., 184 F. Supp. 2d 457, 463 (D. Md. 2002).

Defendant contends that plaintiff's August 1, 2017 email and September 6, 2017 email do not constitute protected activities as required by the first element because in those emails plaintiff does not complain about unlawful discrimination under Title VII. (ECF No. 11-1 at 15). An employee must have a "reasonable and good faith belief that the conduct [] she opposes constitutes unlawful discrimination under Title VII" for such opposition activity to be a protected activity. Jenkins, 840 F. Supp. 2d at 881. Plaintiff's Complaint specifies that on August 1, 2017 plaintiff complained that a white employee was hired for the day shift after plaintiff's own request to be scheduled for the day shift was denied. (ECF No. 1 ¶ 50). Plaintiff's Complaint additionally alleges that on September 6, 2017 she complained about "Ms. Carr's harassment and intimidation." (Id.) Notably, plaintiff did not allege unlawful discrimination under Title VII in either of these emails. Plaintiff's August 1, 2017 email merely states that plaintiff was "surprised" to meet a "new nurse" who was hired for the day shift after plaintiff had been informed that no full-time day shift positions were available in the unit. (ECF No. 11-2 at 2). The email says nothing about the new nurse's race, nor does it make an allegation of discrimination. (Id.) Likewise, plaintiff's September 6, 2017 email fails to allege any unlawful discrimination. In this email, plaintiff states that she felt "harassed," "intimidated," "embarrassed," and "humiliated" by Ms. Carr because Ms. Carr yelled at plaintiff in front of patients and other staff members. (ECF No. 11-3 at 2–3). Plaintiff, however, fails to complain that any of the alleged harassment was unlawful discrimination. See Jenkins, 840 F. Supp. 2d at 880–81. As a result, plaintiff's August 1, 2017 and September 6, 2017 emails do not constitute protected activities. Accordingly, the only protected activities which plaintiff adequately alleges are the initiation of an EEOC complaint and the filing of an EEOC charge against defendant.

Kearns, 2014 WL 2170781, at *10 (stating that "the filing of an EEOC complaint generally constitutes protected activity").

With regard to the second element, as discussed above with respect to plaintiff's Title VII discrimination claims, plaintiff has plead sufficient facts to state that she suffered three retaliatory adverse actions: (1) the final warning; (2) suspension; and (3) termination.  (Id. ¶ 51); see Burlington N., 548 U.S. at 68 (an adverse action in a retaliation claim is one where "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

With respect to the third element, defendant contends that plaintiff cannot satisfy this element because there is no causal relationship between the alleged adverse employment actions and plaintiff's protected activities (i.e., plaintiff's initiation of the EEOC complaint and the filing of the EEOC charge), because defendant lacked knowledge that plaintiff had engaged in these protected activities.  (ECF No. 11-1 at 17).  To establish a causal connection, "plaintiff must establish that when taking the adverse action, an employer had knowledge that the plaintiff had engaged in protected activity."  Finnegan, 184 F. Supp. 2d at 463.  Here, plaintiff merely alleges that defendant was "fully aware of the retaliatory acts against [p]laintiff," however, plaintiff does not support this allegation with any facts to show that defendant had knowledge that plaintiff initiated an EEOC complaint before she received a final warning and was suspended, or that plaintiff filed an EEOC charge before she was terminated.  (ECF No. 1 ¶¶ 49–53).  Plaintiff even concedes that she "could very well [have] pled factual allegations that defendant['s] employees, agents, etc., had knowledge[] imputed to defendant."  (ECF No. 15-1 at 17).  Plaintiff, however, did not plead these facts in her Complaint.  As a result, plaintiff has not sufficiently alleged facts

that there was a causal connection between her protected activities and the alleged adverse actions that she suffered.  See Finnegan, 184 F. Supp. 2d at 463.  Accordingly, plaintiff's retaliation claims in Count VI are dismissed.

## IV.   **LEAVE TO AMEND**

Plaintiff's Opposition states that "The Court Should Plaintiff an Opportunity to Amend Pleadings [sic]."  (ECF No. 15-1 at 17).  Pursuant to Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)."  Fed. R. Civ. P. 15(a)(1).  Because plaintiff did not seek leave to file an amended complaint within 21 days after defendant moved to dismiss under Rule 12(b)(6), plaintiff "may amend [her] pleading only with [defendant's] written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires."  The court, however, may "declin[e] to grant a motion that was never properly made." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014).

Here, the court does not interpret plaintiff's statement as a request to amend her pleadings.  Although plaintiff states that "The Court Should Plaintiff an Opportunity to Amend Pleadings [sic]," plaintiff did not explain the nature of her proposed amendments nor did she include a proposed amended complaint as required by Local Rule 103.6.  As a result, the court finds that plaintiff has not properly sought leave to amend her Complaint.

As discussed above, plaintiff's Complaint must be dismissed because she failed to allege sufficient facts to support her claims in Counts I–VI.  Counts I, II, V, and VI will be dismissed without prejudice, however, because plaintiff may be able to add facts to cure some of the deficiencies identified herein by alleging facts to support viable claims.  If such facts exist,

plaintiff may seek leave to amend her Complaint in accordance with the requirements set forth in Rule 15(a)(2) and Local Rule 103.6 within thirty (30) days of the date of this Opinion.

**V.**      **CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 11) is GRANTED.  A separate order will be issued.


August 14, 2020                                        _____/s/_____
                                                                 Beth P. Gesner
                                                                 Chief United States Magistrate Judge