**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JANE IWEBO,                                        *

     Plaintiff,                                 *

     v.                                         *          Civil No.: BPG-19-3008

SHEPPARD PRATT HEALTH SYSTEM,      *
INC.,
                                                *

     Defendant

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.   (ECF No. 10). Currently pending are defendant's Motion for Summary Judgment ("Motion") (ECF No. 62), plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Opposition") (ECF No. 73), plaintiff's supplemental exhibits (ECF No. 74), and defendant's Reply in Further Support of its Motion for Summary Judgment ("Reply") (ECF No. 75).   No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, defendant's Motion for Summary Judgment (ECF No. 62) is GRANTED.

## I.    <u>BACKGROUND</u>

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case.  <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).  Plaintiff Jane Iwebo ("plaintiff"), a black female of Nigerian national origin, began working as a registered nurse for defendant Sheppard Pratt Health System, Inc. ("defendant") in February 2006.  (ECF Nos. 73-1 at 1, 74-1 at 5).  On

September 6, 2017, plaintiff was working on the evening shift when Celeste Carr ("Ms. Carr"), the supervisor on duty that night, notified Amanpreet Bahra ("Ms. Bahra"), plaintiff's direct supervisor, that plaintiff had been improperly using the computer in Room 2F 208 for personal use. (ECF No. 62-1 at 12). Ms. Carr noted that she saw plaintiff with a textbook on her lap while she was using the computer. (Id.) In response to the alleged misconduct, Ms. Bahra gave Ms. Carr permission to obtain plaintiff's badge and keys and send her home early. (ECF No. 74-6 at 2). Plaintiff, however, refused to turn over her badge and keys and instead requested to speak with Ms. Bahra. (ECF No. 62-6 at 20-26). After speaking with plaintiff, Ms. Bahra decided to allow plaintiff to continue working based in part on staffing needs and so that Ms. Bahra could further investigate the incident. (ECF No. 62-6 at 26, 62-7 ¶ 14).

On that same night, plaintiff sent an email to Ms. Bahra, Chief Nursing Officer Ernestine Cosby ("Ms. Cosby"), and defendant's Employee Relations Manager Stella "Liz" Markov ("Ms. Markov"). (ECF No. 62-14). In her email, plaintiff complained of harassment by Ms. Carr and claimed to have properly used the computer in Room 2F 208 to look up information requested by a patient related to the effects of smoking. (Id.) Plaintiff also indicated that another nurse, Erin Lamartin ("Ms. Lamartin"), felt "upset and intimidated" by Ms. Carr. (Id.) Ms. Bahra subsequently initiated an investigation into the incident, and on September 8, 2017, Ms. Bahra emailed Ms. Markov along with a summary of her findings. (ECF No. 62-12). Specifically, Ms. Bahra noted in her email that the patient for whom plaintiff claimed to look up information on the computer in Room 2F 208 denied ever requesting information about the effects of smoking. (Id. at 2). Ms. Bahra also summarized her observations from her call with plaintiff on September 6 as well as statements from other employees, including Ms. Lamartin and Sierra Pravlik ("Ms. Pravlik"). (Id. at 2-3). Notably, Ms. Lamartin confirmed that she saw plaintiff in Room 2F 208

with an open textbook and denied ever feeling intimidated by Ms. Carr.  (Id. at 3).  Ms. Pravlik also informed Ms. Bahra about another incident on September 6, 2017, in which plaintiff refused an assignment.  (ECF Nos. 62-12 at 3, 62-17 at 2).

On September 15, 2017, following her investigation of plaintiff's conduct on September 6, Ms. Bahra issued a final warning Corrective Action Report ("final warning corrective action"), concluding that plaintiff had been "unprofessional" and exhibited "a repeated pattern of behavior which undermines a culture of workplace safety."  (ECF No. 62-19 at 3).  Specifically, Ms. Bahra noted that plaintiff improperly used Room 2F 208 (including the computer for personal use), was insubordinate when plaintiff refused to turn in her badge and keys to Ms. Carr, submitted false statements, and inappropriately refused an assignment.  (Id. at 3-4).

On September 16, 2017, registered nurse Sherry McGraw ("Ms. McGraw") emailed Ms. Bahra alleging that plaintiff failed to complete accurate paperwork, among other examples of improper care and "hostile" behavior.  (ECF No. 62-25).  On September 18, 2018, in response to Ms. McGraw's allegations, Ms. Cosby, Ms. Carr, and HR collectively placed plaintiff on administrative leave to investigate the September 16 incident.  (ECF No. 62-6 at 38).  Following the investigation, including defendant's review of witness statements from Darlene Ferguson ("Ms. Ferguson") and Miguel Vazquez ("Mr. Vazquez") (ECF Nos. 62-31, 62-32), as well as Ms. Ferguson's statement noting plaintiff's refusal to assist with a patient's activities of daily life ("ADLs") on September 9, 2017 (ECF Nos. 62-26, 62-28), Ms. Bahra and Ms. Cosby made the decision to terminate plaintiff on September 28, 2017 (ECF No. 62-7 ¶¶ 23-26, 62-33).  On September 29, 2017, plaintiff appealed her termination, arguing that the allegations against her

were "false" and "a pretext to terminate my employment for filing an EEOC complaint."[1]  (ECF No. 62-34 at 5-6).  Ms. Cosby and Ms. Markov reviewed and denied plaintiff's appeal.  (ECF No. 62-3 ¶¶ 11-12).  Ms. Markov communicated the final decision to plaintiff in writing on October 30, 2017.  (Id. ¶ 12).

On October 16, 2019, plaintiff filed her original Complaint against defendant, bringing claims of discrimination based on national origin, race, age, and disability, and a claim of retaliation.  (ECF No. 1).  Defendant then filed a Motion to Dismiss (ECF No. 11), which this court granted, dismissing plaintiff's claims without prejudice (ECF No. 20).  On September 18, 2020, plaintiff filed a Motion for Leave to Amend Plaintiff's Complaint and Jury Demand (ECF No. 24), which this court granted in part and denied in part.  (ECF No. 34).  On May 3, 2021, plaintiff filed an Amended Complaint, alleging the following claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981: (1) national origin discrimination; (2) race discrimination; (3) retaliation; and (4) disparate impact.  (ECF No. 36 at 7-11).[2]  Discovery closed on January 3, 2022, and thereafter, the pending Motion and related pleadings were filed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable [factfinder] could return a verdict for the

---

[1] Plaintiff testified during her deposition that she told Ms. Bahra during a phone call on September 18, 2017, that she had already initiated a charge with the Equal Employment Opportunity Commission ("EEOC").  (ECF No. 62-4 at 56).  Defendant, however, denies that plaintiff told Ms. Bahra about her EEOC charge on September 18.  (ECF No. 62-1 at 31).  Plaintiff ultimately filed her EEOC charge on September 19, 2017.  (ECF No. 62-36).

[2] As defendant notes (ECF No. 62-1 at 6 n.1), although plaintiff's Amended Complaint alleges a disparate impact claim, the court dismissed that claim with prejudice on May 3, 2021 (ECF No. 35).

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party but considers whether a fair-minded factfinder could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300

(4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable factfinder could find in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 252.

### III.   <u>DISCUSSION</u>

Defendant moves for summary judgment on all counts, asserting that plaintiff cannot establish a prima facie case of discrimination or retaliation pursuant to Title VII or 42 U.S.C. § 1981.  (ECF No. 62-1 at 21-33).  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . or national origin."  42 U.S.C. § 2000e–2(a).  A separate section of Title VII, its anti-retaliation provision, prohibits an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  <u>Id.</u> § 2000e–3(a).  Section 1981 prohibits discrimination on the basis of race, but "there is no reason why a plaintiff cannot bring a Section 1981 claim on the basis of being 'African' or 'Nigerian.'" <u>Nnadozie v. Genesis HealthCare Corp.</u>, 730 F. App'x 151, 156-57 (4th Cir. 2018).

Claims under Title VII and Section 1981 are both analyzed using the same framework.  <u>Proa v. NRT Mid Atlantic, Inc.</u>, 618 F. Supp. 2d 447, 461 (D. Md. 2009) (citing <u>Gairola v. Commonwealth of Va. Dept. of Gen. Servs.</u>, 753 F.2d 1281, 1285 (4th Cir. 1985)).  This common framework requires that a plaintiff establish liability by: "(1) 'demonstrating through direct or circumstantial evidence that [her] race [or national origin] was a motivating factor in the employer's adverse employment action'; or (2) relying on the burden shifting scheme set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)."  <u>Swaso v. Onslow Cty. Bd. of Educ.</u>, 698 F. App'x 745, 747 (4th Cir. 2017), as amended (Aug. 11, 2017) (citing <u>Holland v. Wash.</u>

Homes, Inc., 487 F.3d 208, 213–14 (4th Cir. 2007)).  In this case, plaintiff relies only on the McDonnell Douglas burden shifting framework.  (See ECF No. 73-1 at 8-17).

Under that framework, the plaintiff must first make out a prima facie case for discrimination or retaliation.  Id.  If the plaintiff proves a prima face case, the burden shifts to the employer to produce evidence of a non-discriminatory, legitimate reason for the action.  Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011).  If the employer provides such a reason, the burden shifts back to the plaintiff to prove that defendant's reason was a pretext for unlawful discrimination or retaliation.  Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004).

## A. **Discrimination Based on National Origin and Race (Counts I and II)**

Plaintiff alleges that defendant discriminated against her because she is a black female of Nigerian and African origin.  (ECF No. 36 ¶ 28-29).  Defendant argues that plaintiff cannot establish a prima facie case of discrimination based on national origin or race.  (ECF No. 62-1 at 21-28).  To establish such a claim under Title VII and Section 1981, a plaintiff must show: "(1) she is a member of a protected class; (2) she 'suffered an adverse employment action'; (3) her job performance was satisfactory; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'"  Swaso, 698 F. App'x at 747 (quoting Adams v. Tr. of Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)).

As to the first two elements, it is undisputed that plaintiff is a member of a protected class and that she suffered an adverse employment action.[3]  (ECF No. 62-1 at 22-23).  Defendant,

---

[3] It is undisputed that the following actions constitute adverse employment actions: plaintiff's termination on September 28, 2017, and the denial of plaintiff's appeal of her termination on October 30, 2017.  See Booth v. Cty. Exec., 186 F. Supp. 3d 479, 485 (D. Md. 2016) (citing Boone v. Goldin, 178 F.3d 253, 255 (4th Cir.1999)) ("Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'").

7

however, contends that plaintiff's national origin and race discrimination claims in Counts I and II fail because there is no evidence to support the third and fourth elements of her prima facie case. (Id. at 23-28).

With respect to the third element, defendant asserts that plaintiff cannot show that her job performance was satisfactory. (ECF No. 62-1 at 23-24). Satisfactory job performance can be shown through "unbiased factual . . . assertion[s] that [plaintiff] was meeting [defendant's] legitimate expectations as an employee." Jeffries v. Wal-Mart Stores E., Civil No. GJH-15-473, 2016 WL 3771241, at *5 (D. Md. July 11, 2016), aff'd sub nom. Jeffries v. Wal-Mart Stores E., L.P., 669 F. App'x 634 (4th Cir. 2016). While plaintiff provides some evidence of satisfactory performance in the past (ECF No. 73-1 at 1, 74-2), plaintiff provides no evidence that her job performance remained satisfactory until her termination. Behar v. 7-Eleven, Inc., No. AW-061776, 2007 WL 8045972, at *3 (D. Md. May 29, 2007) (holding that the plaintiff failed to establish satisfactory work performance when, despite some evidence of satisfactory work performance, she provided "no evidence of her continued satisfactory performance up until her termination").

Specifically, defendant contends that plaintiff was disciplined based on "several instances of misconduct," including insubordination, improper use of a computer in Room 2F 208, submission of false statements, and refusal to perform an assignment. (ECF Nos. 62-12, 75 at 4). As to plaintiff's alleged insubordination, plaintiff argues that it "was not improper or insubordination for [plaintiff] to request to speak to Ms. Bahra in relation to Ms. Carr's request to take [plaintiff's] key and badge." (ECF No. 73-1 at 3). Defendant, however, does not argue that plaintiff was insubordinate when she requested to speak to Ms. Bahra. Instead, the basis of

defendant's claim of insubordination was plaintiff's refusal to turn in her badge and keys to Ms. Carr.[4]  (ECF No. 62-7 ¶ 17).

As to plaintiff's alleged improper use of a computer in Room 2F 208, plaintiff points to evidence showing that Ms. Carr confirmed that she "did not see any titles or web sites pop up that were not [defendant's] sites."  (ECF Nos. 73-1 at 4, 74-10 at 2).  Plaintiff, however, fails to note that Ms. Carr also claimed to observe plaintiff "clearing out the browser history" and closing out of certain programs.  (ECF No. 74-10 at 2).  In addition, there is evidence that plaintiff was using a textbook while typing on the computer.  (ECF No. 62-16).  Further, when Ms. Bahra investigated plaintiff's purported reason for using the computer (i.e., to look up information for a patient related to the effects of smoking), Ms. Bahra learned that plaintiff's justification was false.  (ECF No. 62-12 at 2).  There is no genuine dispute, therefore, that plaintiff improperly used a computer in Room 2F 208 on September 6, 2017.

In addition, plaintiff fails to refute defendant's evidence of false statements, let alone provide any conflicting evidence.  (See ECF No. 73-1 at 9-11).  As to plaintiff's alleged failure to perform an assignment on September 6, 2017, plaintiff argues that Ms. Pravlik, the source of the allegation, was biased against her.[5]  (Id. at 10).  Plaintiff, however, provides no evidence to support

---

[4] Plaintiff argues that Ms. Bahra disapproved of Ms. Carr's decision to request plaintiff's badge and keys and send her home early after Ms. Bahra spoke with plaintiff on September 6, 2017. (ECF No. 73-1 at 9-10).  Plaintiff, however, mischaracterizes the evidence on this point.  Ms. Bahra never "disapproved" of Ms. Carr's decision to request plaintiff's badge and keys and send her home early.  Rather, Ms. Bahra was the one who initially instructed Ms. Carr to take plaintiff's badge and keys and send her home early.  (ECF No. 62-12 at 2).  When plaintiff refused to hand over her badge and keys, Ms. Bahra spoke with plaintiff by phone and ultimately allowed plaintiff to continue working based in part on staffing needs and so that Ms. Bahra could further investigate plaintiff's misconduct.  (ECF No. 62-6 at 26, 62-7 ¶ 14).

[5] Relatedly, plaintiff alleges that defendant discriminated against her when Ms. Pravlik, who is white, was hired for a day shift position even though Ms. Bahra previously denied plaintiff's request to transfer to the day shift and indicated that no positions were available for the day shift. (ECF No. 73-1 at 2).  The evidence, however, clearly shows that Ms. Pravlik was hired for the day

her assertion.  Based on the above, therefore, plaintiff clearly fails to provide sufficient evidence from which a jury could reasonably conclude that plaintiff's work performance was satisfactory up until her termination on September 28, 2017.[6]

With respect to the fourth element of plaintiff's prima facie case of national origin and race discrimination, defendant argues that plaintiff cannot establish an inference of unlawful discrimination.  (ECF No. 62-1 at 25-28).  "The fourth element is met if 'similarly-situated employees outside the protected class received more favorable treatment.'"  Swaso, 698 F. App'x at 747 (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  Moreover, a plaintiff may satisfy the fourth element by showing "a general pattern of racial discrimination in the practices of a defendant," or by relying on comparator evidence.  Id. at 748.  To rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, a plaintiff must show "that the comparator is similarly situated in all relevant aspects."  Ryan v. McAleenan, Civil No. ELH-19-1968, 2020 WL 1663172, at *18 (D. Md. Apr. 3, 2020).  A plaintiff may do so by showing evidence that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's

---

shift position on June 21, 2017, *prior* to plaintiff's request on June 29, 2017, to transfer to that same position.  (ECF No. 62-1 at 10).

[6] Further, plaintiff argues that after she complained about Ms. Carr's "harassment," Ms. Bahra "focused her investigation on obtaining support to take disciplinary action against [plaintiff]." (ECF No. 73-1 at 10).  Plaintiff, however, points to no evidence in support of her assertion. Plaintiff also disputes the misconduct allegations stemming from September 16, 2017, arguing that Ms. McGraw, Ms. Ferguson, and Mr. Vazquez were all biased against her.  (Id. at 10).  As to Ms. McGraw specifically, plaintiff maintains that she was biased against African American employees and "against [plaintiff] for . . . shouting to wake up Ms. McGraw after Ms. McGraw improperly fell asleep on the job on one occasion."  (Id.)  Plaintiff's conclusory assertions, however, are not supported by any evidence in the record from which a jury could reasonably find that plaintiff's work performance was satisfactory up until her termination.

treatment of them for it." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Defendant asserts that there is no evidence to support plaintiff's allegations that other employees outside her protected class dealt with the same supervisor or engaged in similar conduct as plaintiff. (ECF No. 62-1 at 26). Specifically, plaintiff alleged in her Complaint that Ms. Bahra never suspended or fired any white nurses, including Ms. Lamartin, Joshua Butler ("Mr. Butler"), Ms. McGraw, and Mr. Williams, for similarly arguing with colleagues, using defendant's computer and other property for personal use, being "less than truthful" about work related issues, and violating many of defendant's policies. (ECF No. 36 ¶ 23). Plaintiff also alleged in her Complaint that defendant never took action against Joseph Smith ("Mr. Smith"), another white nurse "who was barred by the pharmacy from accessing Defendant's medication system due to missing narcotics." (Id.)

Plaintiff, however, provides no evidence that Ms. McGraw, Mr. Williams, or Mr. Smith dealt with the same supervisor or engaged in the same conduct as plaintiff. (See ECF No. 73-1 at 11-12). Notably, plaintiff fails to even address defendant's arguments as to Ms. McGraw, Mr. Williams, and Mr. Smith. With respect to Ms. Lamartin and Mr. Butler, the only evidence offered by plaintiff is her own self-serving deposition testimony in which she alleged that Ms. Bahra permitted Ms. Lamartin and Mr. Butler (along with Ms. Carr) to "eat on the unit, socialize on the unit, have visits on the unit, [and] use her cell phone on the unit," but did not permit plaintiff to do the same.[7] (ECF No. 62-4 at 41). As defendant notes, however, plaintiff "engaged in further and

---

[7] In her Opposition, plaintiff references "email records" allegedly showing that Ms. Lamartin was not disciplined although she was also improperly using Room 2F 208 on September 6, 2017. (ECF No. 73-1 at 12). Plaintiff, however, fails to provide any evidence to support her assertion. As discussed below, even if plaintiff provided such evidence, the record clearly shows that plaintiff engaged in additional misconduct such that Ms. Lamartin cannot be deemed a valid comparator.

more serious misconduct" than Ms. Lamartin and Mr. Butler, including "insubordination, refusing assignments, providing false information, providing incomplete nursing reports, and acting in a hostile manner towards Ms. McGraw."  (ECF No. 62-1 at 27).  Ms. Lamartin and Mr. Butler, therefore, are not "similarly situated in all relevant aspects."  Ryan, 2020 WL 1663172, at *18.  In addition, Ms. Carr is not an adequate comparator because she held a different position and reported to a different supervisor than plaintiff.  (ECF Nos. 62-4 at 44-45, 62-7 ¶ 12).  Accordingly, plaintiff fails to provide sufficient comparator evidence for a jury to reasonably find that plaintiff was terminated "under circumstances giving rise to an inference of unlawful discrimination."  Swaso, 698 F. App'x at 747.

Alternatively, plaintiff may satisfy the fourth element of her prima facie case of discrimination by showing "a general pattern of racial discrimination" in defendant's practices.  Id. at 748 (citing White, 375 F.3d at 295).  Plaintiff, however, fails to address this issue in her motion papers or provide any evidence of such a pattern of discrimination.  The only evidence regarding a general pattern of discrimination is raised by *defendant*, who notes that plaintiff testified during her deposition that Gloria Nnah and Chinedu Ofor, two Nigerian-American nurses, were denied a particular position in favor of Ms. Carr, who is white.  (ECF Nos. 62-1 at 27, 62-4 at 60).  Defendant also noted testimony in which plaintiff claimed that when she was terminated, her position was given to a white nurse instead of Rosemary Onegula, a more qualified Nigerian nurse.  (ECF Nos. 62-1 at 27, 62-4 at 67-69).  Plaintiff's self-serving assertions, however, are conclusory statements of opinion, not disputed material facts.[8]  See Monk v. Potter, 723 F. Supp.

---

[8] In addition, plaintiff alleges that she has shown an "inference of discrimination" based on the following acts: the "targeting" of plaintiff within a month after she complained about the alleged discriminatory hiring of Ms. Pravlik; Ms. Carr's refusal to accept Ms. Bahra's decision to allow plaintiff to continue working on September 6, 2017; Ms. Bahra's failure to conduct a follow up interview or investigation of Ms. McGraw's allegations; Ms. Bahra's admission that plaintiff was

2d 860, 873 (E.D. Va. 2010) (granting summary judgment when plaintiff alleged that she was harassed and terminated without just cause, among other allegations, without providing any specific factual support).  There is no evidence, therefore, that plaintiff has established the fourth element of her prima facie case of discrimination by showing a general pattern of discrimination. Accordingly, plaintiff has failed to provide any evidence from which a jury could reasonably find that plaintiff was terminated "under circumstances giving rise to an inference of unlawful discrimination." Swaso, 698 F. App'x at 747.  As a result, there is no genuine dispute that plaintiff has failed to establish a prima facie case of national origin and race discrimination.[9]

Even if plaintiff established a prima facie case of national origin and race discrimination, defendant has established evidence of non-discriminatory, legitimate reasons for terminating plaintiff and denying her appeal.  See Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011) (affirming summary judgment when defendant provided evidence of a non-discriminatory, legitimate reason for transferring and then terminating plaintiff, and when plaintiff failed to show pretext).  Plaintiff, however, has failed to show that defendant's reasons for terminating plaintiff and denying her appeal were a pretext for unlawful discrimination.  Specifically, defendant argues that plaintiff's termination and the denial of her appeal were warranted based on plaintiff's misconduct on September 6, 2017, September 9, 2017, and September 16, 2017, including insubordination, improper use a computer in Room 2F 208, submission of false statements, and

---

not insubordinate when she requested to speak with Ms. Bahra; the final warning corrective action issued by Ms. Bahra before the conclusion of the investigation; and defendant's failure to consider plaintiff's "12 years of exceptional performance."  (ECF No. 73-1 at 11).  Plaintiff, however, fails to provide any evidentiary support for her conclusory assertions.

[9] While plaintiff filed numerous exhibits along with her Opposition (ECF No. 74), she sparingly cites to them other than during her introductory recitation of the facts (ECF No. 73-1 at 1-7). Plaintiff otherwise fails to adequately cite to evidence in the record to refute defendant's arguments, although the court has reviewed the exhibits filed.

refusal to complete an assignment and assist with a task related to patient care. (ECF No. 62-1 at 28-29). In response, plaintiff asserts that defendant's reasons for its adverse actions were "false, not worthy of credence and were really used as a cover to discriminate against [plaintiff]." (ECF No. 73-1 at 12). In support of her assertion, plaintiff argues, without citing to any evidence, that "the facts shows [sic] that [plaintiff] was not insubordinate," and that Ms. Pravlik made a biased allegation against plaintiff that was used to support plaintiff's termination. (ECF No. 73-1 at 13). As discussed above, however, defendant provides sufficient evidence to support its claim of insubordination and plaintiff fails to provide any evidence of Ms. Pravlik's bias.

Moreover, even if plaintiff supported her particular assertions with adequate evidence in the record, she fails to address the evidence supporting defendant's other reasons for its adverse actions, including plaintiff's submission of false statements and Ms. McGraw's substantiated allegations of inaccurate paperwork and hostile behavior, along with the numerous corroborating witness statements from Ms. Carr, Ms. Lamartin, Ms. Pravlik, Ms. Ferguson, and Mr. Vazquez. (ECF Nos. 62-12 at 2-3, 62-15 at 2-3, 62-16, 62-17, 62-25, 62-26, 62-32). As a result, there is no genuine dispute that defendant's adverse actions against plaintiff were based on plaintiff's various acts of misconduct on September 6, 2017, September 9, 2017, and September 16, 2017, as well as defendant's thorough investigations of that misconduct.[10] (ECF Nos. 62-7 ¶¶ 25-26, 62-19). Plaintiff, therefore, fails to provide any evidence from which a jury could reasonably conclude that defendant's reasons for its adverse actions were pretextual. Accordingly, summary judgment is granted as to Counts I and II.

---

[10] With respect to the denial of plaintiff's appeal, defendant provides evidence that the appeal was denied based on its review of "the facts and circumstances leading up to the decision to terminate [plaintiff's] employment" and because plaintiff failed to provide new information to support her appeal. (ECF No. 62-3 ¶¶ 11-12).

B. **Retaliation (Count III)**

Defendant argues that plaintiff fails to establish a prima facie case of retaliation.  (ECF No. 62-1 at 30).  To establish a prima facie case of retaliation under Title VII and Section 1981, the plaintiff must show: (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the adverse employment action.  Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216–17 (4th Cir. 2016).  Here, the parties do not dispute the first two elements.  Plaintiff engaged in protected activity when she filed her EEOC charge on September 19, 2017.[11]  Kearns v. Northrop Grumman Sys. Corp., No. ELH-11-1736, 2014 WL 2170781, at *10 (D. Md. May 23, 2014) (stating that "the filing of an EEOC complaint generally constitutes protected activity").  In addition, as discussed above, plaintiff's termination on September 28, 2017, and the denial of plaintiff's appeal of her termination on October 30, 2017, constitute adverse employment actions.

With respect to whether there was a causal connection between plaintiff's protected activity and defendant's adverse employment actions, defendant contends that no such causation exists.  (ECF No. 62-1 at 30-31).  As a threshold matter, defendant contends that Ms. Markov and Ms. Cosby were the ultimate decisionmakers who terminated plaintiff (see ECF No. 62-1 at 31), and that neither Ms. Markov nor Ms. Cosby were aware of plaintiff's EEOC charge until *after* they had already terminated plaintiff (ECF Nos. 62-1 at 31-32, 75 at 11).  "[A] prima facie case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity."  Roberts v. Glenn Indus. Grp., Inc. 998 F.3d 111, 125 (4th Cir. 2021).

---

[11] On August 14, 2020, this court held that plaintiff's August 1, 2017 and September 6, 2017 emails do not constitute protected activities because plaintiff failed to complain "that any of the alleged harassment was unlawful discrimination."  (ECF No. 20 at 25).

As to plaintiff's termination on September 28, 2017, there is evidence that Ms. Bahra was one of the decisionmakers and was aware prior to terminating plaintiff that plaintiff had initiated an EEOC charge. (ECF No. 62-7 ¶ 26). For example, plaintiff testified during her deposition that she verbally told Ms. Bahra on September 18, 2017, that she had initiated her EEOC charge. (ECF No. 74-1 at 29). As to the denial of plaintiff's appeal of her termination on October 30, 2017, there is evidence that Ms. Markov and Ms. Cosby were involved in the decision. (ECF No. 62-3 ¶¶ 11-12). Defendant concedes that Ms. Markov had notice of plaintiff's EEOC charge on September 29, 2017, prior to the denial of plaintiff's appeal. (Id. ¶ 16). Based on the above, there is sufficient evidence that the relevant decisionmakers were aware of plaintiff's protected activity prior to terminating plaintiff and denying her appeal.

As to whether there is sufficient evidence of causation, the third element of a prima facie case of retaliation, a plaintiff can support an inference of causation at the prima facie stage by showing that "the adverse action bears sufficient temporal proximity to the protected activity." Brooks v. United Parcel Service, Inc., DKC-20-2617, 2021 WL 4339194, at *14 (D. Md. Sept. 23, 2021) (citations omitted). "Where temporal proximity is the only evidence of causation, however, the temporal proximity must be very close." Id. (internal quotation marks and citation omitted). A plaintiff, however, may also provide direct evidence of retaliatory animus or evidence of recurring retaliatory conduct to establish causation at the prima facie stage. Id.

Here, plaintiff relies solely on temporal proximity to establish causation. (ECF No. 73-1 at 16). In that case, the temporal proximity must be very close. Brooks, 2021 WL 4339194, at *14. Plaintiff filed her EEOC charge on September 19, 2017 (ECF No. 62-36), and Ms. Bahra and Ms. Markov terminated her approximately 10 days later, on September 28, 2017 (ECF No. 62-7 ¶ 26). Relatedly, Ms. Markov learned about plaintiff's EEOC charge on September 29, 2017 (ECF

16

No. 74-23), and Ms. Markov, along with Ms. Cosby, denied plaintiff's appeal approximately one month later on October 30, 2017 (ECF No. 62-3 ¶ 12).  It is clear, therefore, that the temporal proximity between the filing of plaintiff's EEOC charge and plaintiff's termination and the denial of her appeal is sufficient for a jury to conclude that plaintiff has established causation at the prima facie stage.  Compare Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 253 (4th Cir. 2015) (holding that one month between plaintiff's protected activity and defendant's adverse action was sufficient to establish causation at the prima facie stage), with Booth v. Maryland, 337 F. App'x 301, 310 (4th Cir. 2009) (a period of nine months in between protected activity and adverse employment action negates inference of causation).

As plaintiff has established a prima facie case of retaliation, the burden shifts to defendant to establish a legitimate, non-retaliatory reason for terminating plaintiff and denying her appeal. Foster, 787 F.3d at 250.  Defendant argues that plaintiff's serious misconduct, including her insubordination, refusal of assignments, submission of false statements, and hostility towards a colleague, justified her termination.  (ECF No. 62-1 at 33).  As discussed above, plaintiff has failed to generate a dispute of material fact as to the misconduct alleged by defendant.  In addition, defendant notes that Ms. Markov and Ms. Cosby conducted a review of plaintiff's appeal and ultimately denied it based on "the facts and circumstances leading up to the decision to terminate [plaintiff's] employment" and because plaintiff failed to provide new information to support her appeal.  (ECF No. 62-3 ¶¶ 11-12).  Based on the above, there is no genuine dispute of material fact that defendant proffered legitimate, non-retaliatory reasons for terminating plaintiff and denying her appeal.

In light of defendant's legitimate, non-retaliatory reasons, the burden shifts back to plaintiff to provide evidence of pretext.  Foster, 787 F.3d at 250.  "A plaintiff can prove pretext by

showing that the defendant's explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." Harris v. Wormuth, No. JKB-18-3562, 2022 WL 899953, at *6 (D. Md. March 28, 2022) (citing Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004)). "This showing can take many evidentiary forms. For instance, a showing that defendant at different times, gives different and arguably inconsistent explanations may allow an infere[ence] that the articulated reasons are pretextual." Id. (citing E.E.O.C. v. Sears Roebuck and Co., 243 F.3d 846, 853 (4th Cir. 2001) (internal quotation marks omitted)). Similarly, "a factfinder could infer from the late appearance of [defendant's] justification that it is a post-hoc rationale, not a legitimate explanation for [its] decision." Id. In addition, a plaintiff must provide proof at the pretext stage "that retaliation was a but-for cause of a challenged adverse employment action." Id. at 251-52 (noting that the causation standards for establishing a prima facie retaliation case and proving pretext "are not identical").

In cases in which the court has denied summary judgment at the pretext stage of the McDonnell Douglas framework, there has been a specific proffer of evidence of pretext in addition to evidence of close temporal proximity. See Foster, 787 F.3d at 253-54 (holding that a reasonable jury could conclude that defendant's proffered non-retaliatory reasons for terminating plaintiff were pretextual based on conflicting deposition testimony, evidence of plaintiff's adequate work performance, and defendant's failure to initially provide a reason for terminating plaintiff); see also Harris, 2022 WL 899953, at *6-9 (denying summary judgment on the issue of pretext based on deposition testimony which contradicted defendant's explanations for plaintiff's termination and because of defendant's "inconsistent explanations" regarding plaintiff's conduct, as well as circumstantial evidence negating defendant's justifications).

Here, plaintiff fails to provide any evidence whatsoever to support her argument that defendant's reasons for terminating plaintiff and denying her appeal were a pretext for retaliating against plaintiff based on the filing of her EEOC charge.  Instead, plaintiff provides evidence only of temporal proximity and further argues, without any supporting evidence, "that the alleged infractions by [plaintiff] would not draw the disciplinary consequences under normal circumstances."  (ECF No. 73-1 at 16).  Temporal proximity, however, "is not enough [on its own] to show that protected activity was a 'but for' cause of adverse employment action," as is required at the pretext stage.  Emami v. Bolden, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017) (citing Staley v. Gruenberg, 575 Fed. Appx. 153, 156 (4th Cir. 2014)).

There is also no evidence, and plaintiff does not argue, that defendant ever articulated inconsistent explanations for plaintiff's termination and the denial of her appeal.  Defendant has consistently maintained that its reasons for terminating plaintiff were based on plaintiff's misconduct on September 6, 2017, September 9, 2017, and September 16, 2017, and her failure to provide new information to support her appeal.[12]  (ECF Nos. 62-7, 62-12, 62-19, 62-35, 74-22).  Accordingly, there is no evidence from which a jury could reasonably conclude that defendant retaliated against plaintiff for engaging in protected activity, and summary judgment is granted as to Count III.

---

[12] With respect to defendant's allegation that plaintiff refused to assist with a patient's ADLs on September 9, 2017, plaintiff provides evidence showing that plaintiff assisted with the patient's wound care and helped the patient get dressed.  (ECF Nos. 62-29, 73-1 at 5).  The undisputed evidence, however, clearly indicates that plaintiff refused to assist with *some* of the patient's ADLs, including bathing the patient.  (ECF No. 62-28).

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, defendant's Motion for Summary Judgment (ECF No. 62) is

GRANTED.  A separate order will be issued.

August 24, 2022                             _____/s/_____

                                            Beth P. Gesner
                                            Chief United States Magistrate Judge